## Uher v. Stewart et al.

532

*Maurice A. Nernberg*, for plaintiff.
*John J. Hickton*, for defendants.

JOHNSON, *J.*, May 9, 1974—This controversy between neighbors which escalated into litigation, encompassing the initial disputants and "other unnamed parties" as well as their municipal government and mayor might aptly be considered as "MUCH ADO ABOUT A BASKETBALL HOOP!"

This matter first came to the attention of the court on June 20, 1973, when counsel for plaintiff, Michael Uher (hereinafter "Uher"), counsel for defendant William Stewart (hereinafter "Stewart"), and counsel for defendants Borough of West Mifflin (hereinafter "borough") and Thomas R. McCune (hereinafter "mayor"), appeared pursuant to local court Rule 249 before the court sitting as assignment room judge. At that time, counsel for defendants borough and mayor presented an unfiled petition to open default judgment, a copy of which had been served previously on plaintiff. Plaintiff responded by handing up an unfiled answer to petition to open default judgment. In addition, plaintiff presented unfiled preliminary objections to preliminary objections. The initial preliminary objec-

tions had been filed by defendant Stewart to the complaint. Each of these documents remained unfiled until May 7, 1974, at which time the court, in the interest of disposing of all outstanding matters at one time, directed that they be filed. Hence, they are now before the court for disposition along with all other pleadings in the case. As a result of the disposition of this matter based upon reasons to be set forth below in this discussion, we need not set forth the specific averments in any of the three aforementioned previously unfiled documents.

It seems that early in 1945, plaintiff, Michael Uher, in concert with his wife, Goldie Uher, determined to remove themselves from the impersonal and somewhat noisy surroundings of crowded city life and locate in the more suburban, quiet atmosphere of the borough. They apparently resided peacefully and peaceably there for almost 18 years, until their neighbor, defendant Stewart, constructed a basketball hoop, backboard and net facing Scott Street, a public thoroughfare, one side of which abuts the Uher property and the other side the Stewart property.

Thereafter, plaintiff made repeated entreaties unto defendant Stewart to remove the basketball hoop, plaintiff claiming that this apparatus constituted a situs for the gathering of "large congregations of adults and children in the area for the purpose of playing" basketball. Plaintiff claimed further that those participating in the sport at the aforesaid location "coincidentally and in conjunction therewith cross[ed] onto the property of [plaintiff], destroying his bushes, lawn and damaging his property."[1]

---

1. Considering the litigation before the court gives rise to nostalgic memories of childhood days when the writer partici-

Plaintiff, in his complaint, charges further that defendants Stewart, the borough and its mayor have all refused to remove the basketball hoop; and that the borough and its mayor have refused to enforce the "laws and ordinances prohibiting [disorderly conduct]."

As a result, plaintiff claims the "other un-named parties," the same consisting of "numerous parents and children and adults," "congregate in or about the street area, causing a general nuisance and using loud, blasphemous noises" loafing near the basketball hoop, trespassing upon plaintiff's property and blocking Scott Street.

Plaintiff fails to mention anywhere in his complaint when the various acts of various defendants took place. However, on May 8, 1973, apparently refusing to be exposed further to indoctrination by somewhat dedicated devotees of James Naismith,[2] plaintiff protesting he had been fouled, filed the aforementioned complaint in equity jointly charg-

pated in hanging a wooden bushel basket upon a utility pole in Stoner Way, Wilkinsburg for the exact same purpose defendant Stewart is alleged to have constructed a more modern, professional goal. Daily, all children in the neighborhood for blocks around would, by pre-arrangement or chance, meet in "The Alley" and choose sides to engage in the sport of basketball. My recollection is one of fond memories of balls being shot at, lifted towards, thrown past or dunked through the basket for long hours until our parents summoned us to eat or perform our assigned chores. It is difficult today to walk or drive past any neighborhood where store purchased basketball hoops, nets and backboards do not abound. From the most affluent to the most economically deprived areas, this interest appears to be universal.

2. James Naismith is credited with having invented the game of basketball for students of the School for Christian Workers (now Springfield College) in December, 1891, at Springfield, Massachusetts: The World Almanac and Book of Facts (1974 ed.), page 900.

ing Stewart, the borough, its mayor, and "numerous un-named parties" as set forth above. In addition to failing to set forth the time of the acts allegedly committed and all who are alleged to have committed them, plaintiff fails in his complaint to join as a party plaintiff his wife, a co-tenant by the entirety to the real estate defendants are alleged to have damaged. Further, plaintiff fails to allege that he lacks an adequate remedy at law.

In his prayer for relief, plaintiff asks the court, inter alia, to order the borough and its mayor to enforce its ordinances and laws and the laws of the Commonwealth of Pennsylvania; for an injunction directing the borough and Stewart to remove the basketball hoop; and to prohibit numerous un-named pedestrians from trespassing upon plaintiff's property and causing damage to his personal property as well.

Additionally, the complaint asks "that the *individually* named defendants, each be required to pay all costs, expenses, counsel fees, as well as punitive damages and compensatory damages to the plaintiff for losses caused him." (Emphasis supplied.)

Service of the complaint on defendants mayor and Stewart was accomplished on May 14, 1973, by a copy having been handed to each of their wives at their personal residences. The borough was allegedly served on May 14, 1973, by handing a copy of the complaint to a "Mrs. Suba." There is no averment in the affidavit of service indicating in what capacity "Mrs. Suba" serves the borough.

On May 31, 1973, defendant Stewart filed preliminary objections to the complaint in the form of a motion to strike and a motion for a more specific pleading. Defendants mayor and the borough filed

no answer or preliminary objections to the complaint.

On June 5, 1973, 21 days after the date of service of the complaint, counsel for plaintiff streaked[3] to the prothonotary's office and snapped a default judgment against defendants mayor and borough. In an obvious effort to enforce strict compliance with the Pennsylvania Rules of Civil Procedure plaintiff, pursuant to local Rule 256 of the Rules of the Court of Common Pleas of Allegheny County, filed a purported affidavit of non-military service of defendant mayor. However, in his haste to have his judgment entered exactly 21 days after the date of service of the complaint, plaintiff's counsel failed to have the notary affix the notarial seal to the affidavit, though the notary was his brother and law partner and thus readily available for such purpose. A curious result, to say the least.

Subsequently, on June 8, 1973, these defendants filed preliminary objections to the complaint in the form of a demurrer. They alleged, inter alia, that the complaint is insufficient in that it fails to state on what ordinance plaintiff is relying and it attempts to compel a municipality through its officers to enforce the ordinances of the municipality or the statutes of the Commonwealth of Pennsylvania, which is not a proper subject of an action in equity. Additionally, defendants' objections set forth a motion to strike the complaint insofar as it pertains to them.

Plaintiff then filed a "Memorandum" indicating

---

3. Apologies are extended to that recent cult of exhibitionists who, clad only in sneakers, delight in demonstrating their prowess at track, not in a stadium or gymnasium, but in public buildings and on public thoroughfares.

that defendant Stewart had not complied with Rule 249(1)(b) of local rules of civil procedure.

On September 25, 1973, this matter apparently was presented to another member of the court, prior to this court's disposition. An order was filed indicating that there would be a hearing on October 3, 1973, to determine whether a preliminary injunction should be granted and the amount of bond to be posted. There is no indication from reading the record whether any hearing was held on this date. Plaintiff now asks this court to take action on the outstanding motions before the court.

The threshold question to be answered by the court is whether equitable jurisdiction exists under the complaint as filed by plaintiff: Calabrese v. Collier Township Municipal Authority, 430 Pa. 289, 240 A. 2d 544 (1968); Meehan v. Cheltenham Township, 410 Pa. 446, 189 A. 2d 593 (1963).

It must be noticed that the prayer for relief in this action requests this court to require the former mayor of West Mifflin Borough and the borough itself to enforce the ordinances of the borough and the statutes of the Commonwealth of Pennsylvania. This is a ministerial act which the mayor of the borough and the borough itself are required to perform in any event. When a court is requested to direct an inferior court, officer, corporation or person to perform a particular duty which results from the official station of the party then the proper form of action lies at law in mandamus: 11 Standard Pa. Pract., 223, §1; Goodman v. Meade, 162 Pa. Superior Ct. 587, 60 A. 2d 577 (1948). See also Garchinsky v. Clifton Heights Boro., 437 Pa. 312, 263 A. 2d 467 (1970); Philadelphia Presbyterian Homes, Inc. v. Abington Board of Commissioners, 440 Pa. 299, 269 A. 2d 871 (1970). The proper form

of action against the borough and its mayor in this case was one of mandamus and not one seeking equitable relief.

The basic requirement conferring jurisdiction in equity is that plaintiff aver that he has no adequate remedy at law: Barco, Inc. v. Steel Crest Homes, Inc., 420 Pa. 553, 218 A. 2d 221 (1966); Setlock v. Sutilia, 444 Pa. 552, 282 A. 2d 380 (1971). Since the form of action in the present case against the borough and mayor is mandamus, which is an action on the law side of the court, plaintiff has an adequate remedy at law and therefore, this court, in equity, does not possess jurisdiction over the subject matter of the complaint.

There are additional reasons why equity does not have jurisdiction over the subject matter of this complaint as it applies to these defendants. There is a misjoinder of causes of action. Plaintiff is attempting to join a cause of action on the law side of the court with an equity action. This he cannot do: Pa.R.C.P. 1508. It has been held specifically that a plaintiff cannot in one action join claims against a political subdivision in mandamus and against its officials in *equity* or tort for damages: Korona v. Bensalem Township, 5 Bucks 142 (1955); 10 Anderson Pa. Civ. Prac. (Pa.R.C.P. 1508) (1972 supp. p. 112). See also Lyle v. City of Chicago, 357 Ill. 41, 191 N. E. 255 (1934). Pa.R.C.P. 1508 states that plaintiff may state in his complaint two or more causes of action cognizable in *equity*. In the complaint filed by plaintiff in the instant case, one of the causes of action is at law and one in equity. They may not be joined.

Not only is there a misjoinder of causes of action, but there is also a misjoinder of parties. The proper action against the mayor and the borough is in

mandamus. The proper action against Stewart is in equity. Under Pa.R.C.P. 1508, it is not possible to join these two parties even though the various causes of action arise from the same set of circumstances under Pa.R.C.P. 2229(a) and (b). See 10 Anderson Pa. Civ. Prac., page 181.

We next turn our consideration to the judgment plaintiff snapped by default against defendants mayor and borough. In Roberts v. Gibson, 214 Pa. Superior Ct. 220, at 226, 251 A. 2d 799 (1969), the court stated:

"For a judgment to be void on its face, one or more of three jurisdictional elements must be absent: the court's jurisdiction of the parties; the court's jurisdiction of the subject matter; or the power or authority to render the particular judgment."

This complaint was filed in equity; however, equity, as has been previously noted, had neither jurisdiction over the subject matter or of the parties against whom the default judgment was taken. The default judgment is therefore void and must be stricken from the record: Roberts v. Gibson, supra.

The default judgment taken on defendant mayor is void for yet another reason. When plaintiff rushed to the prothonotary's office to obtain his judgment by default, he carried with him, pursuant to local rule 256, a purported affidavit of nonmilitary service of defendant mayor. The "affidavit" was allegedly sworn and subscribed to on June 5, 1973. However, the "affidavit" bore no notary seal. The Act of August 21, 1953, P.L. 1323, sec. 14, 57 P.S. §160, requires that the seal "shall be impressed opposite the jurat, and affixed in such manner as to make a legible impression on all documents executed." There being no seal affixed to the affidavit of nonmilitary service, the same is a nullity, and the

prothonotary could not properly enter a default judgment against defendant mayor based thereon. See Santilli v. Church, 33 D. & C. 2d 309 (1964). For this reason, even if this court had jurisdiction over defendant mayor, which it does not, the default judgment must be struck since it was entered based upon an affidavit void on its face.

When there is an adequate remedy at law, the bill in equity shall be certified to the law side of the court: Setlock v. Sutila, supra; Meehan v. Cheltenham Township, supra. See also Pa.R.C.P. 1509(c). In this case, since there is an adequate remedy at law as against the defendants borough and mayor, the cause of action against them must be certified to the law side of the court. However, this court is constrained to point out that there are numerous errors on the face of the record which would militate against relief regardless of on which side of the court the action is brought.

Pa.R.C.P. 1095 requires that the complaint in a mandamus action aver the want of any other adequate remedy at law. As was stated previously, this has not been done.

Under Pa.R.C.P. 1097, when an action is commenced to compel performance of a public act or duty by a department, board, commission, instrumentality or officer of the Commonwealth, service shall be at the *office* of defendant by handing a copy of the complaint to the person in charge thereof. In this case, service was had on the borough by handing a copy of the complaint to a "Mrs. Suba." There is no averment as to the capacity in which "Mrs. Suba" served the borough.

Service on the mayor was made not at his office, but rather by delivering the suit papers to his wife at his home.

For the above reasons, this court will strike the default judgment against the borough and mayor and certify the action against them over to the law side of the court. We will also grant plaintiff 20 days in which to amend his complaint as to these two defendants.

Insofar as the complaint pertains to Stewart, it fails to contain an averment that there is not an adequate remedy at law against this individual. Without such an averment, a court of equity has no jurisdiction over the complaint: Setlock v. Sutila, supra. Therefore, plaintiff, to sustain his cause of action, must amend his complaint to indicate whether or not there is an adequate remedy at law. The court will grant plaintiff 20 days in which to amend his complaint.

An appropriate order will be entered.

## ORDER OF COURT

And now, May 9, 1974, plaintiff's complaint, pleadings filed subsequent thereto and the default judgment taken by plaintiff thereon as well as arguments of counsel having been considered, it is hereby ordered, adjudged and decreed:

(1) The default judgment taken by plaintiff on June 5, 1973, against the Borough of West Mifflin and Thomas R. McCune, Mayor of the Borough of West Mifflin, be and the same hereby is struck from the record.

(2) So much of plaintiff's complaint as pertains to the Borough of West Mifflin and Thomas R. McCune, Mayor of the Borough of West Mifflin, be and the same hereby is severed and certified to the law side of the Court of Common Pleas of Allegheny County, and the prothonotary is directed to treat that portion of this case as an action in mandamus.

542

(3) The preliminary objections filed by defendant William Stewart in this action in the form of a motion for a more specific pleading are sustained. The additional preliminary objections filed by defendant Stewart are not being considered or ruled on at this time.

(4) The preliminary objections filed by plaintiff to the preliminary objections filed by defendant Stewart are overruled.

(5) The preliminary objections filed by the Borough of West Mifflin and Thomas R. McCune, Mayor of the Borough of West Mifflin, are not being considered or ruled on at this time.

(6) Plaintiff is given 20 days from the date hereof in which to amend his complaint in mandamus against the defendants Borough of West Mifflin and Thomas R. McCune, Mayor of the Borough of West Mifflin.

(7) Plaintiff is given 20 days from the date hereof in which to amend his complaint in equity against defendant William Stewart.

(8) The order of court entered September 25, 1973 scheduling a hearing to determine whether a preliminary injunction should be granted is hereby rescinded.

