## Philadelphia Presbytery Homes, Inc. *v.* Abington Board of Commissioners, Appellant.

300

Argued May 26, 1970. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Daniel B. Michie, Jr.,* with him *Fell, Spalding, Goff & Rubin,* for appellant.

*Gilbert P. High,* with him *High, Swartz, Roberts & Seidel,* for appellee.

*Donald A. Gallager,* with him *Waters, Fleer, Cooper & Gallager,* for intervenors.

OPINION BY MR. JUSTICE POMEROY, October 9, 1970:

On May 22, 1968, appellee, Philadelphia Presbytery Homes, Inc., filed an application with Abington Township, in accordance with the provisions of the Abington Township Zoning Ordinance, to have the zoning classification of a fourteen acre tract of land in the Township owned by it changed from "V" Residential to "AO" Apartment Office, thereby permitting appellee to erect upon the tract a facility for the housing of

elderly and retired people. A public hearing was held upon this application on September 19, 1968, at which Mr. and Mrs. William C. Adamson, owners of the property abutting the tract in question, entered a protest against the proposed change of zoning. Thereafter, on January 9, 1969, appellant Board of Commissioners held another public meeting at which a vote was taken on appellee's application. At that meeting only fourteen of fifteen authorized commissioners were in office, one having died and no replacement having been appointed. When the roll was called, nine commissioners voted for the amendment and five voted against it. The Township Solicitor ruled that this vote fell short of the requisite margin for adoption in light of the provisions of Section 1905 of the Township Zoning Ordinance, and that the amendment had not been adopted. Section 1905 provides that if the owners of twenty percent of the land immediately abutting any side of an area to be affected by a proposed zoning amendment protest its adoption, affirmative votes of three-fourths of the Board of Commissioners (as distinguished from a simple majority) are required for its adoption.[1]

Following the Solicitor's adverse ruling, appellee brought this action in mandamus asserting that the zoning amendment had been properly adopted and seeking an order compelling the Board of Commissioners to enter the amendment in the Ordinance Book and advertise it as required by The First Class Township Code. Act of June 24, 1931, P. L. 1206, Section 1502, as amended, 53 P.S. §56502. Upon the completion of the pleadings (which consisted of complaint, answer and new matter, and reply), appellee moved for judgment thereon. The court below concluded that the protest provision was invalid because it did not comport

---

[1] Section 1905 of the ordinance is hereafter sometimes referred to as the "protest provision".

with the applicable enabling statute. It accordingly entered judgment for appellee, and this appeal by the Township followed.

Although not considered by the parties in their briefs or arguments, the threshold question to be resolved is whether a writ of mandamus is an available remedy to appellee. In *Unger v. Hampton Township,* 437 Pa. 399, 263 A. 2d 385 (1970), we reaffirmed the well settled principle that, "[m]andamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is a *clear* legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy." 437 Pa. at 401. While it is true that the publication of an ordinance duly adopted by the Township is a mandatory, ministerial duty under Section 1502 of The First Class Township Code, *supra,* the real issue presented in the present case is whether the amendment to the zoning ordinance was or was not adopted by the vote on January 9, 1969. The parties do not question the correctness of the Solicitor's application of the protest provision; only the validity of the provision is challenged. A prerequisite to the resolution of this challenge is, therefore, a determination of the validity or invalidity of the protest provision at the time of the vote on the amendment.

In the *Unger* case, *supra,* one of our grounds for decision was that where it is necessary to establish the invalidity of an ordinance before the right sought to be vindicated by the plaintiff in mandamus can be said to exist, the right is not sufficiently "clear" to form the basis upon which to issue the writ. Reliance was placed upon *Booz v. Reed,* 398 Pa. 172, 157 A. 2d 170 (1960) which had held that "[m]andamus to compel a governmental ministerial officer to act in disobedience of the requirements of the relevant statute, before there

has been a judicial pronouncement of the Act's invalidity, is not the normal procedure for testing the constitutionality of a statute." We cannot avoid the conclusion that the case at bar falls clearly within the holdings of *Booz* and *Unger, supra.* See, also, *Roeder v. Hatfield Borough,* 439 Pa. 241, 266 A. 2d 691 (1970). As we said in *Unger,* the proper procedure for plaintiff to have followed was that set forth in the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L.    , 53 P.S. §§10101 et seq. If, after it had been thus judicially established that the protest provision was invalid and hence that the amendment to which the protest had been interposed was legally adopted, the township officials had failed to act to effectuate the amendment, then would have been the proper time to invoke mandamus; it continues to be an extraordinary writ.

Unlike the situation in *Unger,* however, the use of mandamus in the case at bar has not been challenged by the appellant, and was tacitly approved by the lower court. The Planning Code had become effective on January 1, 1969, only nine days prior to the challenged vote on the amendatory ordinance, and its terms may not have been known to the parties when this action was commenced on the 4th of March following. *Unger* and *Roeder* were not decided until March 20, 1970 and July 2, 1970, respectively. Had the Planning Code provisions been followed, the question of the validity *vel non* of the protest provision would have been decided by the same lower court, presumably in the same way, following a report by the zoning hearing board (which itself has no power to pass upon the validity of any provision of an ordinance or map (§910)) and "appeal" therefrom under §1001 et seq. Under these unique circumstances, therefore, and because adherence to the letter of the procedural law would but serve to

prolong for many months litigation now over two years old, we have decided not to vacate the order of the lower court and dismiss the case, but to consider the appeal on its merits.

As already indicated, the substantive issue presented is whether the Township's protest provision, Section 1905 of its zoning ordinance, was valid on January 9, 1969, when the Board of Commissioners voted on the zoning change applied for by appellee. As background to the understanding of this issue, it will be helpful to have in mind some of the zoning provisions of The First Class Township Code, *supra*. Although these provisions were repealed as of January 1, 1969, by Section 1201 of the Pennsylvania Municipalities Planning Code, *supra*, 53 P.S. §11201, they were in force at the time the Township protest provision was adopted in 1966. By Article 31, §3101 of The First Class Township Code [53 P.S. 58101 (1957 Edition)], townships of that class were given the power to adopt zoning ordinances. Section 3104 of the same Act, 53 P.S. §58104 (1957 Edition) provided that, "[t]he board of township commissioners . . . shall provide, by ordinance, the manner in which such regulations and restrictions . . . shall be determined, established and enforced, and, from time to time, amended, supplemented or changed." Thus, Abington Township was granted authority to establish the procedure through which its zoning ordinances could be amended. Finally, however, section 3105 of the Act, 53 P.S. §58105 (1957 Edition) placed a restriction on the power to amend or change zoning ordinances: "In case, however, of a protest against such change, signed by the owners of twenty per centum or more, either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear or in the front or to either side thereof extending one hundred feet therefrom[,] [s]uch amendment

shall not become effective except by the favorable vote of three-fourths of all the members of the board of township commissioners." The Abington Township protest provision is virtually identical to the portion of section 3105 of The First Class Township Code here quoted.

On October 19, 1967, section 3105 of The First Class Township Code was amended by Act 210 of 1967 so that a protest by the owners of more than 20% "of the total abutting linear periphery of the parcel of land proposed to be changed" was necessary before more than a simple majority vote was required to adopt a zoning amendment; at the same time, the voting majority required to effectuate the protested amendment was reduced from three-fourths to two-thirds. Section 3105 of The First Class Township Code was thereafter specifically repealed by the Pennsylvania Municipalities Planning Code, §1201, which, as noted above, became effective January 1, 1969. The question we must answer, therefore, is what, if any, effect these subsequent statutory changes had on the validity of the Township's protest provision.

In concluding that the 1967 amendment to section 3105 undermined the validity of the Township's protest provision, based as it was on the pre-amendment version of that section, the court below relied upon three basic principles of law. The first was set forth by this Court in *Kline v. Harrisburg,* 362 Pa. 438, 447, 68 A. 2d 182 (1949): "It is settled in Pennsylvania that in the absence of the granting of specific power from the Legislature municipalities do not have the authority to pass zoning ordinances." The second, a corollary rule, was also noted in *Kline, supra,* at 451: "It is to be remembered, however, as was stated in White's Appeal, 287 Pa. 259, 266 (1926) that 'While (zoning) regulations may not physically take the property, they do so

regulate its use as to deprive the owner of a substantial right therein without compensation.' *Powers with such serious consequence should be exercised only in the manner designated by the legislature.*" (Emphasis added.)[2] The final principle was enunciated in *Brazier v. Philadelphia,* 215 Pa. 297, 300, 64 Atl. 508 (1906): "It is, of course, beyond all question that, if the statute and the ordinance are inconsistent, or, if the statute can fairly be regarded as intended to supplant the ordinance, the latter must give way and the statute only have effect given to it." Applying these three principles to the case at bar, the court concluded that the authority of the Township to adopt a protest provision derived from the statute, and, because it did, such authority was to be exercised only as the statute prescribed. When, therefore, the statute was amended and the ordinance was not, the ordinance became inconsistent with the statute and hence invalid. We believe this conclusion to be sound.

Appellant contends that section 3104 of The First Class Township Code gave it plenary power to adopt any procedure for the amendment of its zoning ordinance and that section 3105, by increasing beyond a simple majority the required number of commissioners' votes, was merely a limitation on that power. It reasons that the 1967 amendment relaxing that limitation (i.e., reducing the margin from three-fourths to two-thirds) did not compel the Township automatically to amend its protest provision; that it merely prescribed the minimum citizens' protest restriction which the Township might have on its amendatory powers and did not preclude it from retaining a restriction more stringent.

---

[2] See, also, *Miners Savings Bank v. Duryea Borough,* 331 Pa. 458, 462, 200 A. 846 (1938); *Burke v. North Huntingdon Township,* 390 Pa. 588, 594, 136 A. 2d 310 (1957).

While we agree that section 3105 of The First Class Township Code was a restriction on the power granted by section 3104, we do not agree that the Township was free to adopt or ignore the legislature's amendment thereof. A basic constitutional principle in Pennsylvania is that "the General Assembly shall not pass any local or special law: 1. Regulating the affairs of . . . townships. . . ." Pennsylvania Constitution Article III, §32. In accordance with this provision, the legislature passed, and has from time to time amended, The First Class Township Code. We have no doubt that the Code was intended to provide a basic framework of government for *all* First Class Townships and that all First Class Townships must adhere to its provisions. This conclusion follows not only from the uniformity principle but also from the principle set forth in *Brazier, supra,* that ordinances inconsistent with statutes covering the same subject must fall. The amendment here in question, Act 210 of 1967, was not a wholesale amendment of The First Class Township Code; it was an act amending only section 3105. The act contained no savings clause which would have preserved inconsistent ordinances adopted under prior enabling acts. Thus, we must conclude that the legislature intended to set forth a new citizens' protest procedure to be applied uniformly throughout all townships of the first class.

After October, 1967, then, only the revised citizens' protest procedure could have been properly applied by Abington Township. The protest against the amendment affecting appellee's property was insufficient under that procedure to give rise to the requirement of a two-thirds majority for adoption for the reason that the owners of land abutting twenty percent of the total linear periphery of the tract to be rezoned had not lodged a protest.

The final argument advanced by appellant is that even if its protest provision became invalid in 1967, as we have held, all restrictions on the Township's amendatory power were removed as of January 1, 1969 through the repeal of section 3105 by section 1201 of the Municipalities Planning Code, supra, 53 P.S. §11201. The Planning Code, like the Township Code, permits municipalities to adopt, amend and repeal zoning ordinances, but contains no protest provision. Section 601, 53 P.S. 10601. Moreover, it expressly does not invalidate zoning ordinances enacted under prior enabling laws which it repeals. Section 620, 53 P.S. 10620. Since appellant's protest provision was adopted under a prior enabling statute and is not inconsistent with any provision of the Planning Code, it argues that the provision has remained in force and effect.

The difficulty with this argument is the fact that the protest provision contained in Section 1905 of the zoning ordinance became invalid in 1967. As noted by the court below, "Abington Township, on January 9, 1969 [or January 1, 1969, which is the more crucial date] had no valid protest zoning ordinance adopted in conformity with Act 210 [revised section 3105]. Accordingly, the Planning Code could not breath life into [the protest provision] which was invalid and of no effect as previously determined."

Agreeing, as we do, with the court below that the Township protest provision was not effective at the time of the vote on the zoning amendment, we conclude that the amendment was properly adopted by a simple majority vote. The court below was therefore correct in ordering its publication.

Order affirmed.

Mr. Justice COHEN and Mr. Justice ROBERTS concur in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.