728 F.2d 167
 ABRAHAM, Abraham K.
v.
PEKARSKI, James W., ind. and as President, Board of
Commissioners, Township of Bristol, Mascia, Marie L., ind.
and as Vice Pres., Board of Commissioners, Township of
Bristol, Cotungo, Chaser J., ind. and as Commissioner,
Township of Bristol, Sommerer, William H., ind. and as
Commissioner, Township of Bristol, Gesualdi, Anthony V.,
ind. and as Commissioner, Township of Bristol, Lewis,
Robert, Jr., ind. and as Commissioner, Township of Bristol,
Cattani, Jennie, ind. and as Commissioner, Township of
Bristol, Wurm, Albert W., ind. and as Commissioner, Township
of Bristol, Melio, Anthony J., ind. and as Commissioner,
Township of Bristol, and Township of Bristol
Appeal of TOWNSHIP OF BRISTOL, James W. Pekarski, Marie L.
Mascia, Chaser J. Cotungo, William H. Sommerer, Anthony V.
Gesualdi, Robert Lewis, Jr., Jennie Cattani, Jerry Catania,
Albert M. Wurm, and Anthony J. Melio, in Nos. 83-1135 and 83-1419.
Appeal of Abraham K. ABRAHAM, in No. 83-1151.
 Nos. 83-1135, 83-1151 and 83-1419.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 29, 1983.
Decided Feb. 13, 1984.
Certiorari Denied June 11, 1984.
See 104 S.Ct 3513.
 
 Clyde W. Waite (argued), Steif, Waite, Gross & Sagoskin, Bristol, Pa., for appellants Tp. of Bristol, et al.
 Marshall E. Kresman (argued), Walder, Martin & Kresman, Bensalem, Twshp., Pa., for Abraham K. Abraham.
 Before GIBBONS and SLOVITER, Circuit Judges, and CALDWELL, District Judge.*
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Abraham K. Abraham, the former Director of Roads and Public Property of Bristol Township, Pennsylvania, recovered a jury verdict against the Township and certain members of its Board of Commissioners for $17,365.47 in compensatory damages, and against five individual Commission members for $2,000 each in punitive damages. The district court also awarded Abraham attorneys' fees as a prevailing party. Abraham's civil rights action arises out of his dismissal by a majority of the Commission on July 25, 1979. His amended complaint alleges that Abraham had been dismissed solely on the basis of his political beliefs, see Elrod v. Burns, 427 U.S. 347, 355-73, 96 S.Ct. 2673, 2680-89, 49 L.Ed.2d 547 (1976) (Brennan, J.); id. at 374-75, 96 S.Ct. at 2690-91 (Stewart, J.); Branti v. Finkel, 445 U.S. 507, 513-20, 100 S.Ct. 1287, 1292-95, 63 L.Ed.2d 574 (1980), and that he had been deprived of a property interest in employment without a hearing. The district court dismissed Abraham's Elrod claim on summary judgment; Abraham then prevailed on the due process theory at trial.
 
 
 2
 The defendants now appeal from the judgment in Abraham's favor on the due process theory, contending that the district court erred in denying their motions for judgment notwithstanding the verdict and for a new trial. Defendants also object to the allowance of certain hours in the computation of attorneys' fees, and to the holding that Abraham is a "prevailing party." Abraham cross-appeals from the grant of partial summary judgment in favor of the defendants on his Elrod claims and on claims seeking damages for intentional infliction of emotional distress. During oral argument, Abraham conceded that if we affirm the judgment in his favor on due process grounds, then his cross-appeal on the Elrod issue is moot, in that a verdict in his favor on that issue or on the emotional distress claims would not support an award of further relief. We affirm the judgment in Abraham's favor, and dismiss his cross-appeal as moot.[1] We also affirm the district court's award of fees.I.
 
 
 3
 The Bristol Township Board of Commissioners is elected from wards. The defendant James Pekarski is its president. During 1978 and 1979, Pekarski led a majority faction of the Board consisting of himself and defendants Anthony Gesualdi, Jennie Cattani, Jerry Catania, Marie Mascia, and Anthony Melio. Four of the defendants--Chaser Cotugno, William Sommerer, Robert Lewis, and Albert Wurm, representing wards 1, 2, 4, and 7, respectively--comprised a minority faction of the Board. Until July 25, 1979, Abraham, a civil engineer, served as Director of Roads and Public Property. His amended complaint charges that the faction led by Pekarski directed him to withhold municipal services from Township wards represented by members of the minority faction. It charges further that when he refused to cooperate by withholding road work in those wards, he was discharged without a hearing.
 
 
 4
 Abraham advanced two legal theories in the trial court. He contended, first, that his discharge was in retaliation for his refusal to join a majority political faction in the municipality, and thus was in violation of the federal substantive liberty interest recognized in Elrod v. Burns, 427 U.S. 347, 355-73, 96 S.Ct. 2673, 2680-89, 49 L.Ed.2d 547 (1976) (Brennan, J.), id. at 374-75, 96 S.Ct. at 2690-91 (Stewart, J.), and Branti v. Finkel, 445 U.S. 507, 513-20, 100 S.Ct. 1287, 1292-95, 63 L.Ed.2d 574 (1980). He also contended that he had a state law property interest in continuing employment, which was terminated without due process of law. The defendants, without filing any affidavits, moved for summary judgment on both theories. The trial court granted their motion with respect to the Elrod-Branti ground, but held that Abraham did have a Pennsylvania law property interest in employment. Abraham v. Pekarski, 537 F.Supp. 858, 866-71 (E.D.Pa.1982). Thus, the district court denied defendants' motion for summary judgment on Abraham's due process claim, and the case proceeded to trial on that theory.
 
 II.
 
 5
 The defendants urge somewhat half-heartedly that no evidence adduced at trial supported Abraham's due process claim. That contention is frivolous. It was conceded in the trial court that Abraham was discharged without any hearing whatsoever. If Abraham had a property interest in not being discharged except for good cause, the conceded fact that he was discharged without a hearing is alone enough to support the verdict in his favor. The trial court, in a ruling that was more favorable to the defendants than that to which they were entitled, required that the jury also find that Abraham's discharge was not for just cause. That ruling was erroneous. A post-termination judicial finding respecting an employment dismissal is not a substitute for a pre-termination due process hearing. See Perri v. Aytch, 724 F.2d 362 at 366-367 (3d Cir.1983). The jury verdict, in any event, determined that Abraham was not terminated for just cause. That verdict is amply supported by evidence tending to suggest that the majority of the Board discharged Abraham because he refused to cooperate with them in withholding municipal services from wards represented by members of the minority faction. See App. at 95-108, 166-73, 194-201.
 
 
 6
 With greater enthusiasm, the defendants also contend that they were entitled to summary judgment, and to judgment notwithstanding the verdict, because the trial court erred in holding that Abraham had a Pennsylvania law entitlement. In a well-reasoned portion of the district court's opinion addressing the due process theory, the district court rejected this contention. See 537 F.Supp. at 866-71. The court noted that Section 26(n) of the Bristol Township Managers Ordinance governed Abraham's employment. That section provides that "no person shall be discharged without just cause." Id. at 868. The court also noted that the Pennsylvania Local Agency Law, 2 Pa.Cons.Stat.Ann. Secs. 501-508, 551-555 (Purdon Supp.1983), governs proceedings of the Bristol Township Board of Commissioners. That state statute requires notice and an opportunity to be heard with respect to agency determinations affecting personal or property rights. Id., Sec. 553. Finally, the court noted that under Pennsylvania law, an enforceable expectation in continued employment, guaranteed either by contract or by law, is a property right under the Local Agency Law. See 537 F.Supp. at 869. The court's treatment of the Pennsylvania Agency Law and the cases construing it is thorough and need not be repeated here. We agree that under those authorities, Abraham had a property interest in his employment. We note as well that the district court's analysis is consistent with our decision in Perri v. Aytch, 724 F.2d at 365-366, holding that Pennsylvania court regulations authorizing dismissal "for just cause" give rise to a property interest in employment under Pennsylvania law.
 
 
 7
 The verdict in Abraham's favor on his claim of deprivation of a property interest in employment without due process is amply supported in law and in fact. The trial court did not err in denying defendants' motions for summary judgment or for judgment notwithstanding the verdict.
 
 III.
 
 8
 Although the jury did not award punitive damages against the Township, see City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981), it did award such damages against several individual Commission members. These appellants contend that there is insufficient evidence to support the imposition of punitive damages. Consequently, they argue, their motion for judgment notwithstanding the verdict with respect to punitive damages should have been granted. We hold that the defendants' objection to punitive damages was not preserved in a motion for directed verdict, and therefore may not be raised in a motion for judgment notwithstanding the verdict. We also hold, assuming arguendo that the issue of punitive damages could be raised, that the evidence supports the jury's verdict.
 
 A.
 
 9
 The parties stipulated to a bifurcated trial on liability and damages. At the close of Abraham's case on liability issues, counsel for defendants moved for a directed verdict on Count 4 of the complaint. Count 4 alleges a pendent state law claim for intentional infliction of emotional distress. After the court postponed ruling on that motion, the following colloquy ensued:
 
 
 10
 THE COURT: Now wait a minute. Is that the sole motion that you have?
 
 
 11
 MR. WAITE: I would move for a directed verdict on the remaining claims of the plaintiff as well.
 
 
 12
 THE COURT: All right.
 
 
 13
 MR. WAITE: That the evidence is not sufficient, viewed in the light most favorable to the plaintiff.
 
 
 14
 THE COURT: All right. I think it is clearly a jury issue and I will deny your motion.
 
 
 15
 App. at 246-47. This is the only reference by defendants to the sufficiency of the evidence. It is plainly addressed to the sufficiency of the evidence on liability, not on damages. That motion cannot reasonably be considered to have alerted the trial court or opposing counsel that the defendants were contending for a stricter evidentiary standard with respect to punitive damages.
 
 
 16
 At trial, defendants maintained that they discharged Abraham for reasons of economy, and therefore for just cause. At the close of trial, counsel for defendants approved a verdict slip containing the interrogatory on liability agreed upon by stipulation:
 
 
 17
 Was plaintiff fired from his position without just cause or was plaintiff's position eliminated by reason of economy?
 
 
 18
 App. at 281. After a charge to which the defendants made no objection, the jurors returned a verdict "that the plaintiff Abraham K. Abraham lost his position as Director of Roads and Public Property of Bristol Township because he was fired from that position without just cause and we therefore find for the plaintiff on the issue of liability." App. at 317. Thus, the jury expressly rejected the explanation tendered by the defendants that they acted, in discharging Abraham, for reasons of economy.
 
 
 19
 The trial resumed the next day on damage issues, the evidence for which is reviewed below. At the conclusion of Abraham's case, counsel for defendants made no motion with respect to the sufficiency of the evidence. See App. at 361. Nor did defendants offer any damage testimony. Thus, at no point in the trial did defendants make a motion for directed verdict on punitive damages. Before the damage interrogatories were submitted to the jury, however, they were shown to counsel. At that point, counsel offered the only objection addressed to punitive damages during these proceedings:
 
 
 20
 MR. WAITE: Well, I would have an objection to punitive damages generally as to any of the defendants. Any action that was taken by them would have to be in their capacity as township managers and as commissioners and acting on behalf of the township. I don't believe that punitive damages would be appropriate.
 
 
 21
 App. at 363. This ground for objection to the submission of the punitive damages issue to the jury was groundless, for as Abraham's counsel noted immediately, while a municipality may not be held liable for punitive damages under section 1983, municipal officials can be. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 269, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981) ("[b]y allowing juries and courts to assess punitive damages against the offending official, based on his personal financial resources, [section 1983] directly advances the public's interest in preventing repeated constitutional deprivations"). Thus, at no point before the case was submitted to the jury did defendants raise any question about the sufficiency of the evidence to support an award of punitive damages.
 
 
 22
 The court charged, with respect to punitive damages, as set forth in the margin.[2] The defendants made no objection to the charge, and sought no instruction as to what evidence would be required to sustain an award of punitive damages.
 
 
 23
 Since no objection was made on the ground now relied on to instructing the jury on punitive damages, the defendants cannot rely on that instruction as error. Fed.R.Civ.P. 51. Moreover, a Rule 50(b) motion for judgment notwithstanding the verdict may not be made on grounds that were not asserted in a motion for directed verdict. Mallick v. International Brotherhood of Electrical Workers, 644 F.2d 228, 233-34 (3d Cir.1981); Wall v. United States, 592 F.2d 154, 159-60 (3d Cir.1979); Lowenstein v. Pepsi-Cola Bottling Co., 536 F.2d 9, 10-11 (3d Cir.), cert. denied, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976). As noted above, no directed verdict motion questioned the sufficiency of the evidence to support an award of punitive damages. On this record, therefore, it would be improper to grant relief from the judgment entered on the verdict awarding Abraham punitive damages.
 
 B.
 
 24
 Even if we were free to consider the point, however, the defendants' argument as to the insufficiency of the evidence which would justify an award of punitive damages is singularly unpersuasive. Because most of the evidence respecting Abraham's lost earnings were stipulated to by the defendants, Abraham testified only briefly on that aspect of his damage claim. Abraham also testified about the manner of his firing, which had occurred without notice and which was effective immediately:
 
 
 25
 [Township Manager Mark] said [that Abraham was fired] "immediately." From the very moment on. That means I am a culprit or a criminal or some sort of very heinous [person] .... [T]his [was] not [even] a pay period ending time.
 
 
 26
 App. at 343. Exploring the effect that this abrupt (and in the jury's eyes unjust) termination had on him, Abraham testified:
 
 
 27
 I'm thrown away like I don't know what expression I should use. Then I felt I cannot hold my--my feet can't hold my weight. I sat down and I thought I am falling through, I am shattering into broken pieces ..., something like that, because with this [occurrence,] if somebody asked you [why you were] fired suddenly, ... no organization is going to accept you for a job.
 
 
 28
 App. at 343-44. Thereafter, when he was given his final pay check, Abraham was told by the Assistant Township Manager that "[Y]our position has been eliminated." App. at 356. This was the only official information Abraham had received. Id. At the time when the jury heard this testimony, it had already rejected defendants' contention that Abraham's position had been eliminated for budgetary reasons.
 
 
 29
 The jury could well find, on this record, that the individual defendants acted, in firing Abraham, with ill will and oppressively. Ill will could be inferred from the credited testimony that Abraham was fired for refusing to cooperate in defendants' designs to reduce municipal services for residents in the wards represented by council members in the minority faction. Oppressive action could be inferred from the failure to give Abraham notice of a hearing, from the failure to give him reasonable notice of termination, from the abruptness of his discharge and its impact on him, and from the pretext with which, according to the credited testimony, the reason for that discharge was clothed. Viewing the entire evidence in the light most favorable to Abraham, we cannot say that the record "is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." Denneny v. Siegel, 407 F.2d 433, 439 (3d Cir.1969); see Stanton v. Astra Pharmaceutical Products, Inc., 718 F.2d 553, 568 (3d Cir.1983). Thus even if we were on this record free to reach the punitive damage question, the verdict would stand.
 
 IV.
 
 30
 The defendants urge that they are entitled to a new trial because they were entitled to have the jury consider whether they acted in good faith and with reasonable belief in the legality of their actions. See Harlow v. Fitzgerald, 457 U.S. 800, 815-19, 102 S.Ct. 2727, 2737-39, 73 L.Ed.2d 396 (1982); Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). The defendants did not move for summary judgment on this ground. They made no motion for a directed verdict or for a judgment notwithstanding the verdict on this ground. They requested no instruction on their good faith, and made no objection to the court's failure to charge on that issue. Thus, the good faith immunity defense cannot be considered here. See, e.g., Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 680 (3d Cir.1980). Moreover, even if the issue had been raised in the trial court, we doubt that on this record the defendants would have been entitled to a good-faith belief immunity charge. They tried the case not on the theory that they believed they were legally entitled to fire Abraham without cause, but on the theory, discredited by the jury, that solely for budgetary reasons they had abolished his position. No issue of good faith--belief was tendered by the evidence.
 
 V.
 
 31
 By letter, after briefs were filed, the defendants called to our attention the decision in Aitchison v. Raffiani, 708 F.2d 96, 98-100 (3d Cir.1983), holding that the rule of Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)--recognizing a federal common law rule of legislative immunity from damage actions for legislative activities--applies to the legislative actions of municipal governing bodies. Although the letter is cryptic, we read it as contending that this rule bars an award of punitive or compensatory damages against the individual defendants.
 
 
 32
 At no point did the defendants contend in the district court that they were entitled to absolute immunity because, in firing Abraham, they acted legislatively. Because the contention was never presented to the district court, it may not, absent special circumstances such as the announcement of a new rule of law, be considered here. There are no such circumstances. The availability of a legislative immunity defense in section 1983 damage actions has been settled since 1951. Case law in other courts antedating the trial of this action recognized the applicability of the Tenney v. Brandhove rule to legislative actions of subsidiary units of state governments having legislative powers. See Hernandez v. City of LaFayette, 643 F.2d 1188, 1192-94 (5th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 611-15 (8th Cir.1980); see also Reed v. Village of Shorewood, 704 F.2d 943, 952-53 (7th Cir.1983); Espanola Way Corp. v. Meyerson, 690 F.2d 827, 829-30 (11th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); Kuzinich v. County of Santa Clara, 689 F.2d 1345, 1349-50 (9th Cir.1982). Thus, the defendants had no reason to suppose that such a defense would be rejected if in fact they were acting in a legislative capacity. It is too late, at this stage, to rely on that defense as a ground for granting a judgment notwithstanding the verdict.
 
 
 33
 In any event, however, the legislative immunity defense, even if it had been asserted in the trial court, is not on this record a ground for a judgment notwithstanding the verdict. As Aitchison v. Raffiani clearly articulates, it is available only for "legislative," as distinct from managerial, activities of members of local governments. 708 F.2d at 99. The evidence is undisputed, Pennsylvania law makes clear, and the jury's verdict necessarily establishes, that in this instance the individual defendants did not act in a legislative capacity.
 
 
 34
 In Pennsylvania, as in most states, municipal corporations are given by legislation a combination of proprietary, managerial, and legislative powers. It is only with respect to the legislative powers delegated to them by the state legislatures that the members of governing boards of municipal corporations enjoy legislative immunity. Necessarily, therefore, the first inquiry with respect to the application of such immunity must be whether those claiming it were performing delegated legislative, rather than proprietary or managerial, functions. Moreover, since municipal corporations have been delegated legislative authority only within strictly defined statutory limits, they can only act legislatively when following the statutory procedures specified for such action. See Philadelphia Presbytery Homes, Inc. v. Board of Comm'rs, 440 Pa. 299, 306-09, 269 A.2d 871, 874-75 (1970). The fact that the action complained of resulted from a vote of the members of the governing body is not dispositive, for in the exercise of non-legislative powers all corporate bodies require a vote of their governing bodies.
 
 
 35
 Bristol Township functions under the First Class Township Code, Pa.Stat.Ann. tit. 53, Secs. 55101 to 58502 (Purdon 1957 & Supp.1983). The corporate powers of First Class Townships are set forth in Article XV, id. Secs. 56501-56590. The Township Board of Commissioners is vested with all of the Township's corporate powers. Id. Sec. 56502. Legislative powers, however, must be exercised by the adoption of "ordinances" enacted in compliance with specified procedures:
 
 
 36
 All such proposed ordinances, unless otherwise provided by law, shall be published at least once in one newspaper of general circulation in the township not more than sixty days nor less than seven days prior to passage. Publication of any proposed ordinance shall include either the full text thereof or the title and a brief summary prepared by the township solicitor .... No ordinance, or resolution of a legislative character in the nature of an ordinance, shall be considered in force until the same is recorded in the ordinance book of the township.
 
 
 37
 Pa.Stat.Ann. tit. 53, Sec. 56502 (Purdon Supp.1983). The Township Code recognizes the distinction between the Township's legislative and its proprietary or managerial powers, for section 56504 authorizes the Commissioners to delegate non-legislative powers to a Township Manager. In Township Ordinance No. 384 (Nov. 15, 1961), Bristol Township did so. Bristol Township Code Secs. 21-30, Exh. P-3, App. at 435-38. One of the Manager's delegated non-legislative functions is the hiring and discharge of township employees. Id., Sec. 26(n), App. at 437. Thus, the decision to hire or fire subordinates of the Township Manager is plainly managerial rather than legislative.
 
 
 38
 In this case the record is clear. There is no evidence whatsoever that the Board's action was published in a newspaper of general circulation 60 days in advance of the action, or recorded in the ordinance book of the township. The jury found, in answer to the special interrogatory on liability, that Abraham was "fired" by the Board from a position subordinate to the Township Manager. Discharge from that position is by statute and ordinance a non-legislative function. Plainly, therefore, the decision to fire Abraham was a matter of law managerial, not legislative.
 
 
 39
 Thus we reject the defendants' belated attempt to obtain a judgment notwithstanding the verdict on grounds of legislative immunity.
 
 VI.
 
 40
 Defendants' final objection to the judgment of the district court is to the award of counsel fees pursuant to 42 U.S.C. Sec. 1988 (Supp. V 1981). That objection is groundless. Although Abraham did not prevail on each of his legal theories, he obtained the relief he sought. See Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (" 'plaintiffs may be considered "prevailing parties" for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit' ").
 
 
 41
 The trial court correctly applied those standards governing the calculation of the award. The defendants except to the inclusion in the lodestar of hours expended in depositions arguably directed to the Elrod-Branti claim. Those depositions were used at trial, however, in establishing the due process claim. The court concluded that the time in issue was reasonably expended in the claim on which Abraham prevailed. That ruling is entirely consistent with Hensley v. Eckerhart, 103 S.Ct. at 1940 (lawsuit cannot be viewed as a series of discrete claims when claims "involve a common core of facts").
 
 VII.
 
 42
 The judgments appealed from in No. 83-1135 and No. 83-1419 will be affirmed. The appeal in No. 83-1151 will be dismissed, without costs, as moot.
 
 
 43
 SLOVITER, Circuit Judge, concurring.
 
 
 44
 I join in Parts I through IV and Parts VI and VII of the majority's opinion.
 
 
 45
 As to Part V, I agree that because defendants did not raise in the district court the claim that they were entitled to a legislative immunity defense, they have waived that claim. Given that disposition, I see no reason for the majority opinion to have included, altogether gratuitously, the remainder of Part V. As obiter dictum, the discussion is without precedential value. Even more troublesome, that discussion addresses an issue that was never briefed before us and never presented in the first instance to the district court. In this circumstance, I have more hesitancy than does my colleague Judge Gibbons in asserting that "the decision to fire Abraham was as a matter of law managerial, not legislative." Majority Op. at 175 (emphasis added). The parties and the district court, in particular, might have had some useful light to shed on that question. Had this issue been dispositive, the normal procedure would have been to remand it to the district court for resolution.
 
 
 46
 I believe that it is unsound, both for prudential and jurisprudential reasons, to reach to decide issues which are unnecessary to our disposition and have not been fully developed in the district courts. While a departure from our well-established procedure may be justified in an unusual situation, I see nothing in the record or this case which warrants that action here.
 
 
 
 *
 Hon. William W. Caldwell, United States District Judge for the Middle District of Pennsylvania, sitting by designation
 
 
 [1]
 The district court opinion on the Elrod-Branti issue is reported. See Abraham v. Pekarski, 537 F.Supp. 858 (E.D.Pa.1982). Because of our disposition of Abraham's cross-appeal, we have no occasion to approve the trial court's analysis of the Elrod-Branti question
 
 
 [2]
 In addition to actual damages, the law permits the jury, under certain circumstances, to award the injured person punitive and exemplary damages, in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct
 If you should find from a preponderance of the evidence in the case that the acts of one or more of the defendants which proximately caused actual injury or damage to the plaintiff or deprived him of his constitutionally protected rights were maliciously, or wantonly, or oppressively done, then you may, if in the exercise of discretion you unanimously choose so to do, add to the award of actual or nominal damages such amount as you shall unanimously agree to be proper as punitive and exemplary damages.
 An act or a failure to act is maliciously done if prompted or accompanied by ill will, or spite or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member.
 An act or a failure to act is wantonly done if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person.
 An act or a failure to act is oppressively done, if done in a way or manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness or disability or misfortune of another person.
 App. at 385-86.