Lucie C. BRYANT, Plaintiff,

v.

Ken NICHOLS, et al., Defendants.

Civ. A. No. 88–T–623–N.

United States District Court, M.D. Alabama, N.D.

March 17, 1989.

---

Gary E. Atchison, Montgomery, Ala., for plaintiff.

Randall Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for defendants, Nichols, Weaver, Carter and City of Andalusia.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Lucie C. "Pollie" Bryant, an employee of the City of Andalusia, Alabama, has brought this lawsuit against the City of Andalusia, Alabama, and several of its officials, charging them with, among other things, retaliating against her in violation of the first amendment as enforced by 42 U.S.C.A. § 1983. Ms. Bryant contends that the various defendants violated her constitutional rights by taking several adverse actions against her, including demoting her. She claims that all of these actions were done in retaliation for her exercise of her constitutional rights to petition the government and to speak and associate freely.

On February 21, 1989, two of the defendants, Ken Nichols and Roy H. Weaver, Jr., filed a motion for summary judgment, asserting that as members of the Andalusia city council they are entitled to absolute legislative immunity. In a brief order dated March 15, 1989, the court denied the motion, with a statement that a memorandum opinion would follow shortly. This is the promised memorandum opinion.

### I.

Ms. Bryant's dispute with defendants goes back at least to late 1985, when she was demoted after returning to work following an illness. She challenged this action in federal court, suing certain of the officers of Andalusia, including some or all of the defendants in the suit now before this court. That suit reached settlement. Shortly after this settlement, Chalmers Bryant, the mayor of Andalusia and Ms. Bryant's brother-in-law, upgraded her employment position and increased her salary.

Subsequently, however, the city transferred Ms. Bryant to a less desirable position, with an accompanying pay cut. Ms. Bryant asserts that the defendants caused her to be transferred in retaliation for her filing her prior lawsuit. She contends that, through the "cooperative efforts" of Nichols, Weaver, and two other individuals, a letter was drafted recommending that she be transferred and effectively demoted. This letter, she claims was then delivered to Mayor Bryant who was in the hospital. In this letter, which was addressed to the city council, Mayor Bryant alerted the council to his deteriorating health condition, and stated:

> [R]ealizing that administrative matters directly affecting the operation of City government must be dealt with expeditiously, I hereby agree to the following: 1. That Mrs. Polly Bryant be transferred to the Street and Sanitation Department as a Secretary at a pay scale applicable for that job classification. This action is recommended because the settlement in Mrs. Bryant's lawsuit against the City did not find the City had wrongfully transferred, demoted or changed her rate of pay....

This letter was presented to the city council during their meeting that night. According to the minutes of that meeting, the council took up the issue of Ms. Bryant's transfer and demotion shortly after granting the mayor a medical leave of absence with pay. As described in the minutes, Weaver, acting as mayor at this meeting, "called for an informal vote relative to these recommendations as a show of support." At that point, councilmember James Krudop interjected,

> Mayor Pro Tem, it seems to me in order and that we just granted Chalmers [Bryant] this 90 day request, that you are empowered to do what must be done as Mayor of the City whereas Mayor Bryant had this responsibility earlier. It seems to me that you use your best judgement and your legal counsel to pro-

ceed as necessary and lead us back into a most prosperous and positive light.

Krudop then abstained from the vote, noting his view that Weaver as acting mayor bore the authority to make personnel decisions. After the council's positive vote, he apparently reiterated that the council only showed support for the mayor's inclination and did not purport to make personnel decisions on its authority. Councilmember Edgar King then asked both Weaver and the city clerk if any changes in Ms. Bryant's employment status had been executed, to which both replied that no changes had been made.

A few days later, Mayor Bryant signed a personnel action form effecting this change in Ms. Bryant's status; Weaver, as mayor pro tem, was a cosigner to the personnel action form.

## II.

In their motion for summary judgment, Nichols and Weaver argue that they engaged in only legislative activity in the circumstances surrounding Ms. Bryant's transfer and demotion. As members of the Andalusia city council who voted on the recommendation to change Bryant's employment status, they maintain that they are immune from suit on the basis of the doctrine of absolute legislative immunity.

The applicability of the doctrine of legislative immunity, which has its roots in English legal history, was first recognized by the Supreme Court in *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). In *Tenney*, the Supreme Court held that state legislators engaged "in the sphere of legislative activity" are absolutely immune from suit under § 1983.[1] *Id.*, at 376, 71 S.Ct. at 788. In reaching its holding, the Supreme Court stressed the need to ensure unfettered decision-making by those charged with the responsibility of determining public policy:

Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. The holding of this Court in *Fletcher v. Peck*, 6 Cranch 87, 130, 3 L.Ed. 162, that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned. *Id.*, at 377, 71 S.Ct. at 788.

Relying upon these same policy considerations, the Supreme Court later extended the doctrine of legislative immunity to apply to "regional legislators," *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). To date, however, the Court has voiced no opinion as to whether such immunity extends to "individuals performing legislative functions at the purely local level." *Id.*, at 404 n. 26, 99 S.Ct. at 1178–79 n. 26. *But see Longo v. United States*, —— U.S. ——, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989) (granting certiorari to consider question of whether local legislator can be held in contempt for actions taken within the scope of his legislative activities).

While the Supreme Court has not yet broached the application of legislative immunity to local officials, the parties agree that the law of this circuit recognizes absolute immunity for local legislators against liability arising out of their legislative acts. *See Healy v. Town of Pembroke Park*, 831 F.2d 989, 993 (11th Cir.1987); *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir.1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983). Thus, the issue before the court is whether,

---

**1.** While *Tenney* only addressed the issue of whether legislative immunity provided absolute immunity from damages actions under 42 U.S.C.A. § 1983, the Supreme Court later extended its protection to bar suits seeking declaratory or injunctive relief as well. *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 732–33 & n. 10, 100 S.Ct. 1967, 1974–75 & n. 10, 64 L.Ed.2d 641 (1980).

under the facts of this case, Nichols and Weaver were engaging in legislative activity so as to be entitled to the doctrine's protection. Upon consideration of the record to date, the court concludes that they were not.

Weaver and Nichols bear the burden of establishing their claim of immunity from liability. *See Forrester v. White,* 484 U.S. 219, ——, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). To satisfy this burden, they must demonstrate that their actions, which Lucie Bryant claims deprived her of protected rights, were legislative in nature. As the Eleventh Circuit has emphasized, "[I]t is the official *function* that determines the degree of immunity required, not the *status* of the acting officer." *Espanola Way,* 690 F.2d at 829, (*quoting Marrero v. City of Hialeah,* 625 F.2d 499, 508 (1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981) (emphasis in original)). Indeed, the Supreme Court has frequently acknowledged that officials may be entitled to absolute immunity for some of the actions that they have undertaken, but are deserving of no such protection for the performance of other duties. *See Forrester v. White,* 484 U.S. at ——, 108 S.Ct. at 544–45 (state court judge not entitled to absolute immunity when performing administrative employment functions); *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 731–37, 100 S.Ct. 1967, 1975–77, 64 L.Ed.2d 641 (1980) (classifying some actions of the Virginia Supreme Court as being legislative and others as being those of enforcement and discussing the differing legal ramifications associated with the varying types of activity). Because there is no bright line separating a city's administrative actions from its legislative actions, the court must examine the specific activity complained of and assess whether it was performed in the course of legislative duties. Looking to both the facts of this case and the applicable law concerning application of legislative immunity, the court is convinced that the defendants have not

established that any actions they took were in their legislative capacity.

First, from a factual perspective, Weaver and Nichols have not shown that their decisions and subsequent actions affecting Ms. Bryant's employment status were performed in the course of fulfilling a legislative function. As an initial observation, the court notes that Mayor Bryant himself considered the issue of Ms. Bryant's transfer to be an administrative matter.[2] Moreover, the minutes of the council meeting relied on by Weaver and Nichols do not clearly establish that the council intended to take any action with respect to Ms. Bryant's employment, other than to support the decision which the mayor apparently intended to make. Indeed, a fair reading of the minutes shows considerable uncertainty regarding the council's authority to take any action at all with regard to the mayor's proposed personnel decision. Ms. Bryant's allegation that Weaver and Nichols participated in the drafting of the letter recommending her transfer and demotion is as consistent with the theory that they assisted the mayor in his executive capacity, as it is with the theory that they acted on behalf of the council.

Second, under state law, it appears that matters concerning employment decisions, like those made with regards to Ms. Bryant, are managerial functions and not legislative. *See Abraham v. Pekarski,* 728 F.2d 167, 174–75 (3rd Cir.1984) ("[i]t is only with respect to the legislative powers delegated to them by the state legislatures that the members of governing boards of municipal corporations enjoy legislative immunity"), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1985) *Cf. Carroll v. City of Prattville,* 653 F.Supp. 933, 941 (M.D.Ala.1987) (state law can serve as a guide to determine whether certain actions are within the legislative sphere). The city's rules and regulations as presented by Ms. Bryant in her opposition to Nichols and Weaver's assertions of legislative immunity vest authority over personnel de-

---

**2.** *See* Chalmers Bryant letter dated November 9, 1987, to city councilmen, *found in* Minutes City

of Andalusia Council, page 2 (Def.'s Exhibit A).

cisions, such as the decisions to hire, discharge, or reinstate personnel, exclusively in the mayor. These rules and regulations appear to be consistent with Alabama state law which mandate that mayors shall be the chief executive officers of cities in the state and suggests that mayors have general authority, subject to certain exceptions not here involved, over the city's personnel matters. 1975 Ala.Code § 11–43–81 (1977). A plausible reading of the Alabama Court of Civil Appeals' decision in *City of Brighton v. Gibson*, 501 So.2d 1239 (Ala.Civ.App. 1987), in which the appellate court held that the mayor had authority to hire a personal secretary without obtaining the consent of city council, suggests that, had the council actually attempted to make the decision to transfer Bryant, instead of recognizing the mayor's responsibility to do so, the council might have been acting outside its authority. This interpretation is consistent with the view of some councilmembers who had contended that the vote at the city council meeting was merely an expression of support for the mayor's decision.

### III.

Nonetheless, Nichols and Weaver argue that their initial vote in the city council immunizes their behavior. This court recognizes that some courts read the Eleventh Circuit's opinion in *Espanola Way*, 690 F.2d at 829–30, as establishing a "bright line" rule that a legislative act is one on which the body votes. *E.g., Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 579 (9th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). This court believes that such an interpretation of *Espanola Way* reads more into the court's holding than is necessary. In *Espanola Way*, the Eleventh Circuit observed that in a prior opinion, *Hernandez v. City of Lafayette*, 643 F.2d 1188 (5th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982), it had "noted that the vote of a city councilman constitutes an exercise of legislative decision-making." *Espanola Way*, 690 F.2d at 829.

*Hernandez* addressed the issue of whether a mayor who vetoed a zoning ordinance was entitled to legislative immunity.

In discussing this issue, the court of appeals viewed a veto as an essential part of the process by which the ordinance was passed:

> The mayor's veto, like the veto of the President or a state governor, is undeniably a part of the legislative process. It differs only in that it takes place on the local level. When the mayor exercises his veto power, it constitutes the policy-making decision of an individual elected official. It is as much an exercise of legislative decision-making as is the vote of Congress, a state legislator, or a city councilman.

643 F.2d at 1194. Thus, properly read in context, *Hernandez* stands for the proposition that mayoral actions that are merely extensions of a city council's exercise of its own legislative responsibilities are protected by the doctrine of legislative immunity. *Hernandez*, however, is silent as to what actions should be considered by their nature to be "within the sphere of legislative activity."

The court does note that on one occasion, the Eleventh Circuit, *in dictum*, did seem to suggest a broad, bright-line rule that the mere fact that members of a body vested with legislative authority vote on an issue clothes those members with legislative immunity. In *Ramsey v. Leath*, 706 F.2d 1166 (11th Cir.1983) (per curiam), the plaintiffs, two city police officers, sued various city officials including the mayor and two councilmembers alleging that they had been demoted and disciplined in retaliation for their prounion activities. The defendants contended that the officers had violated police department policy, that the chief of police had recommended the demotions, and that the councilmembers had voted to follow the chief's recommendations. The Eleventh Circuit upheld the demotions, finding that the evidence supported the conclusion that the plaintiffs had violated the police department's rules and that no evidence existed to suggest that the plaintiffs had been disciplined in retaliation for their union activities. *Id.*, at 1169. In a footnote, the court of appeals provided an

alternative grounds for its holding in support of the defendants:

> Although the district court did not reach the issue, we note that the evidence indicates that summary judgment could have been granted on the alternate ground of immunity. [The mayor and city councilmembers] voted for the demotions in good faith, based on the reasonable grounds asserted in Chief McSween's recommendation. Thus, the mayor and councilmen would not be liable even if Chief McSween's assertions were inaccurate. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir. 1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982).

*Id.,* at 1169–70 n. 2.

As the First Circuit has observed, this dictum is both confusing and troubling. *See Cutting v. Muzzey,* 724 F.2d 259, 262 (1st Cir.1984). It is confusing because it discusses "good faith," an issue that suggests imposition of qualified immunity, yet it cites authorities that represent theories of absolute immunity. *Id.,* at 262. It is troubling for two other reasons. First, if the dictum is interpreted as the state of Eleventh Circuit law, it suggests that all local legislators need to do to make themselves immune from suit is vote on an issue, regardless of their motivations and regardless of the issue. But this ignores the fact that many municipal bodies must

vote as a means of conducting both legislative and administrative business. *See Abraham v. Pekarski,* 728 F.2d at 174 ("[t]he fact that the action complained of resulted from a vote of the members of the governing body is not dispositive, for in the exercise of non-legislative powers all corporate bodies require a vote of their corporate bodies").[3]

Second, and more importantly, such a result would eviscerate the functional approach that has been the central focus of determining whether to grant legislative immunity. As both the Supreme Court and many lower federal courts have recognized, employment decisions directed at the status of a specific individual are generally considered to be administrative, regardless of what the status is of the actual decision-maker. *See Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (no judicial immunity for firing of probation officer by judge because of officer's sex); *Davis v. Passman,* 442 U.S. 228, 236 & n. 11, 99 S.Ct. 2264, 2272 & n. 11, 60 L.Ed.2d 846 (1979).[4] *See also Abraham v. Pekarski,* 728 F.2d at 174; *Gross v. Winter,* 692 F.Supp. 1420, 1425 (D.D.C.1988); *Kuchka v. Kile,* 634 F.Supp. 502, 508 (M.D. Pa.1985); *Coffey v. Quinn,* 578 F.Supp. 1464, 1467 (N.D.Ill.1983); *Visser v. Magnarelli,* 542 F.Supp. 1331, 1333–34 (N.D.N. Y.1982); *Detz v. Hoover,* 539 F.Supp. 532, 534 (E.D.Pa.1982).

The Supreme Court's recent decision in *Forrester v. White* reemphasized that abso-

---

**3.** In *Cinevision Corp. v. City of Burbank,* the Ninth Circuit addressed the problem with imputing a bright-line rule based on legislative voting:

> [N]ot all governmental acts by a local legislator, or even a local legislature, are necessarily legislative in nature.... Although a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity. Rather, whether actions are, in law and fact, an exercise of legislative power depends not on their form but upon whether they contain matter which is properly to be regarded as legislative in its character and effect. The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct.

745 F.2d at 580 (quotations, citations, and footnote omitted).

**4.** In *Davis v. Passman,* the Supreme Court held that "judicial review of congressional employment decisions is constitutionally limited only by the reach of the Speech or Debate Clause of the Constitution, Art. I, § 6, cl. 1." 442 U.S. at 236 n. 11, 99 S.Ct. at 2272 n. 11. In so holding, the Court appears to have implicitly recognized, as had the panel of the Fifth Circuit before it, that no absolute legislative immunity is generally available to legislators making employment decisions. *See Davis v. Passman,* 544 F.2d 865, 881 (5th Cir.1977), *rev'd on other grounds on reh'g, Davis v. Passman,* 571 F.2d 793 (5th Cir. 1978) (en banc), *rev'd,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

lute immunity is only appropriate in certain instances:

> Running through our cases with fair consistency, is a "functional" approach to immunity questions other than those that have been decided by express constitutional or statutory enactment. Under that approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.

484 U.S. at ——, 108 S.Ct. at 542. In *Forrester*, the Court was confronted with the question of whether a judge who faced sexual discrimination charges in a demotion and discharge scenario could drape himself within the security of absolute immunity. Responding in the negative, the court concluded, "personnel decisions ... are often crucial to the efficient operation of public institutions ..., yet no one suggests that they give rise to absolute immunity from liability in damages under § 1983." *Id.*, at ——, 108 S.Ct. at 545. The Court determined that, with regards to his personnel decisions, the judge acted in an administrative, as opposed to judicial, capacity, and that absolute immunity therefore did not apply. 484 U.S. at ——, 108 S.Ct. at 545.

Following the Supreme Court's most recent analysis as set forth in *Forrester*, this court concludes that Weaver and Nichols are not entitled to absolute immunity under the facts of this case. In reaching this conclusion, the court notes that the city council's decision was not a policy decision that focused on such traditional legislative matters as the provision of city services, *e.g., Healy v. Town of Pembroke Park*, 831 F.2d at 993; rather, it was a personnel action directed toward affecting the em-

ployment status of one individual.[5] Ms. Bryant's complaints against Weaver and Nichols are better classified as challenging actions that were performed in the course of fulfilling administrative or managerial functions. *Cf. Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. at 734–37, 100 S.Ct. at 1975–77 (members of the Virginia Supreme Court enjoy legislative immunity for conduct within their legislative capacity, but not for actions arising out of their enforcement authority); *Gutierrez v. Municipal Court of the Southeast Judicial District, County of Los Angeles*, 838 F.2d 1031, 1047 (9th Cir.1988), *pet. for cert. filed*, 57 U.S.L.W. 3590 (U.S. Mar. 7, 1989) (No. 88–1395) (legislators, in promulgating work standards of conduct, were acting in their capacity as employers, not legislators).[6]

As stated, an appropriate order has already been entered.

---

**5.** *See, e.g., Cutting v. Muzzey*, 724 F.2d at 261; *Kuchka v. Kile*, 634 F.Supp. at 508; *Visser v. Magnarelli*, 542 F.Supp. at 1333–34 & n. 4.

**6.** Ms. Bryant also argues that, even if Nichols and Weaver's actions at the council meeting could be considered legislative, their "cooperative efforts" before the meeting in drafting the letter recommending her dismissal clearly were not. She suggests in this alternative argument

that the actions of the two council members may be divided into legislative conduct for which they are entitled to immunity and administrative conduct for which they are not. Whether Nichols and Weaver's conduct may be so divided is an issue the court need not reach because, as shown above, the record reflects that their actions at the council meeting were not legislative.