611 So.2d 977 (1992)
DYNASTEEL CORPORATION
v.
AZTEC INDUSTRIES, INC.
No. 90-CA-85.
Supreme Court of Mississippi.
December 31, 1992.
*978 Michael F. Myers, Steen Reynolds Dalehite & Currie, Jackson, for appellant.
Jeffery P. Reynolds, Heidelberg & Woodliff, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
BANKS, Justice, for the Court:
Here we consider a default judgment, without notice, for interest, attorneys' fees and punitive damages where the underlying debt was paid immediately after service of process, but no further action of record was taken by the defendant. We conclude that the defendant did not make an appearance so as to be entitled to notice within the meaning of Miss.R.Civ.P. 55(b), that the relief awarded was fairly within that *979 prayed for within the meaning of Miss. R.Civ.Pro.Rule 54(c), and was not excessive. We, therefore, affirm in all respects, except punitive damages for which there was no evidentiary support with regard to the financial ability of the defendant.

I
DynaSteel Corporation appeals from an action on open account brought against it by Aztec Industries, Inc. DynaSteel failed to file an answer to Aztec's complaint, and approximately two months after filing its complaint, Aztec petitioned the court for entry of default judgment against DynaSteel for failure to answer or otherwise defend. No notice was given to DynaSteel regarding either the motion for entry of default or the hearing on the motion to assess damages and enter default judgment. The court granted Aztec's motion and entered a default judgment against DynaSteel. DynaSteel had already paid the principal amount of its debt ($12,835.28) to Aztec before the default judgment was entered. DynaSteel had not paid Aztec any amounts for interest, attorneys' fees, or other costs of collection.
The circuit court awarded Aztec $406.91 in prejudgment interest, $4,280 in attorneys fees, $15,000 in punitive damages, and court costs. DynaSteel subsequently filed a motion to set aside the default judgment, which was denied. It is that entry of default judgment and refusal to set aside which DynaSteel contests on this appeal.
Specifically, DynaSteel presents the following three issues for review by this Court:
1. Is the default judgment void with respect to the issuance of punitive damages as a consequence of having extended to matters outside the scope of Aztec's pleadings?
2. Had DynaSteel "appeared" in the sense contemplated by Rule 55 of the Mississippi Rules of Civil Procedure, so as to be entitled to notice of Aztec's application for default judgment?
3. Were the damages awarded in the default judgment justified as a matter of law and not excessive?

II
DynaSteel Corporation is a steel fabrication company with its main office located in Memphis, Tennessee. DynaSteel, though incorporated under the laws of Tennessee, is registered to do business in Mississippi. Aztec Industries is a Mississippi corporation located in Richland, Mississippi.
Pursuant to a contractual agreement, Aztec performed steel galvanizing work for DynaSteel on four separate occasions during November and December of 1988. The invoices for this work totalled $12,835.28. Each of the invoices issued for the four jobs mandated that payment be made within thirty days of the date of the invoice. DynaSteel did not pay any of these bills within the stipulated time period. Aztec made a number of demands upon DynaSteel for payment of these accounts. Aztec, through its attorney, made a written, itemized demand for payment from DynaSteel on March 21, 1989.
On May 4, 1989, Aztec, not yet having received payment from DynaSteel, initiated this action by filing a formal complaint in the Circuit Court of the First Judicial District of Hinds County. Aztec sought a judgment against DynaSteel for the principal amount of $12,835.28 in actual damages, plus prejudgment interest, attorneys' fees, punitive damages, and court costs. On May 9, 1989, the summons and complaint were properly served upon DynaSteel's agent for service of process in Mississippi. Sometime prior to May 12, 1989, DynaSteel mailed a check for the full amount of the principal debt of $12,835.28 to Aztec's lockbox in Fort Worth, Texas. The exact date the check was mailed is not known. DynaSteel contends that it mailed this check before it became aware that Aztec had filed a lawsuit against it. We do not know that this check was negotiated by Aztec's bank in Texas on May 12. Aztec's own records do not reflect a credit to DynaSteel's account for payment of this amount until May 15, 1989.
On May 18, 1989, Aztec's attorneys sent a letter to DynaSteel notifying DynaSteel that Aztec's acceptance of the $12,835.28 *980 check from DynaSteel was made without prejudice and under protest. Aztec expressly reserved all of its claims set forth in its complaint regarding attorneys' fees, interest, punitive damages, and any other relief the court might find just and proper.
During the immediately subsequent six weeks, there were communications between the two sides regarding the possibilities of payment or settlement of the claims that Aztec believed it still had against DynaSteel. The extent of these communications is a subject of considerable dispute between the parties. No settlement agreement was ever reached. As of July 7, 1989, DynaSteel had yet to file a formal answer to Aztec's complaint, and on that date, Aztec filed both an application for entry of default and a motion for default judgment.
Aztec claims that in the last settlement offer that it made to DynaSteel in late June of 1989, it warned DynaSteel that, if it did not accept that offer by the close of the following business day, Aztec's lawyer's would proceed with the lawsuit against DynaSteel and would take a default against DynaSteel, since it had failed to file an answer. DynaSteel, on the other hand, claims that it never received such a warning. In any event, DynaSteel was never given any notification that an application for default had actually been made against it, nor was it informed of the subsequent hearing that was to take place regarding Aztec's motion for default judgment.
On July 24, 1989, a hearing was held before Circuit Court Judge Hilburn to determine: 1) whether a default should be issued under the circumstances; and, if so, 2) what damages Aztec was entitled to receive. Mike McGee of Aztec Industries was the only witness called to testify. Mr. McGee testified regarding the problems that Aztec had incurred in attempting to collect its debt from DynaSteel and the efforts that Aztec had made to collect.
On July 24, 1989, the circuit court entered a default judgment against DynaSteel. It awarded Aztec $406.91 in prejudgment interest, $4,280 in attorney's fees, and $15,000 in punitive damages. The court based its ruling on the following specific findings of fact:
1. [DynaSteel] delayed payment almost five months on an amount it knew that it owed [Aztec]. Then, payment by [DynaSteel] was only made after attorneys were retained and suit was filed by [Aztec].
2. Furthermore, [DynaSteel] has steadfastly refused to pay [Aztec] any interest or attorney's fees in this case. [Aztec] is clearly entitled to attorney's fees under Miss. Code Ann. § 11-53-81 since much more than thirty days [had] elapsed since [Dynasteel] was placed on proper notice of the $12,835.28 total of the principal debt due by it to [Aztec].
3. [Aztec], and its agents and attorneys, [had] made persistent demands upon [DynaSteel] for the amounts due [Aztec].
The only evidence presented regarding DynaSteel's net worth was (1) an Equifax report indicating that DynaSteel had ten vehicles registered to its name in Tennessee and (2) a photocopy of portions of a publication entitled "Million Dollar Directory" indicating that DynaSteel had approximately eight million dollars in annual sales.
In September 1989, Aztec filed a complaint in the Chancery Court of Shelby County, Tennessee to enforce its judgment against DynaSteel. On October 18, 1989, DynaSteel filed a motion in the Hinds County Circuit Court to set aside the default judgment that had been entered against it. In support, DynaSteel filed an affidavit from Harold Trusty, Vice-President of DynaSteel. Mr. Trusty stated that DynaSteel's failure to timely pay Aztec stemmed at least in part from problems DynaSteel had incurred in collecting debts from its own clients. He also stated that DynaSteel had never received any notice of either the default judgment entered against it or the hearing held pursuant to the entry of that judgment until Aztec commenced its action for collection on that default judgment in the Tennessee court.
A hearing on that motion was held on November 9, 1989. Neither side presented any witnesses. On December 12, 1989, the court entered an order denying the motion *981 without opinion. DynaSteel perfected its appeal to this Court on January 3, 1990.

III
We begin by addressing DynaSteel's procedural concern. The question is whether under the circumstances of this case it was entitled to notice of the proceedings to assess damages.
Mississippi Rule of Civil Procedure 55(b) provides in part that:
If the party against whom judgment is sought has appeared in the action, he shall be served with written notice of the application for judgment at least 3 days prior to the hearing of such application.
It is DynaSteel's contention on this appeal that, although it never filed an answer to Aztec's Complaint, it had appeared in the sense contemplated by Rule 55(b) and was thereby entitled to notice of the application for default that Aztec made against it. Because no such notice was given, DynaSteel claims that the default judgment entered pursuant to Aztec's application should have been set aside by the trial judge. We reject that contention.
Traditionally, to make an appearance, one had to file documents in or actually appear before a court. Journey v. Long, 585 So.2d 1268, 1272 n. 5 (Miss. 1991); Trust Co. Bank v. Tingen-Millford Drapery Co., 119 F.R.D. 21, 22 (E.D.N.C. 1987). Today, however, the appearance commanded by Rule 55(b) has been defined broadly and interpreted liberally and is not limited to formal court appearances. Journey 585 So.2d at 1272 n. 5.; Heleasco Seventeen, Inc. v. Drake, 102 F.R.D. 909, 912 (D.Del. 1984) (quoting H.F. Livermore Corp. v. Aktiengesellschaft, 432 F.2d 689 (D.C. Cir.1970)). The focus of the inquiry is on whether the non-movant has manifested to the movant a clear intent to defend the suit. Journey 585 So.2d at 1272 n. 5.
The official comments to Rule 55(b) provide:
The purpose of this portion of Rule 55(b) is simple: It is intended to protect those parties who, although delaying in a formal sense by failing to file pleadings within the thirty day period, have otherwise indicated to the moving party a clear purpose to defend the suit. On the other hand, when a defaulting party has failed to appear, thereby manifesting no intention to defend, he is not entitled to notice of the application for a default judgment.
In denying DynaSteel's motion to set aside, the trial judge did not make a specific finding regarding whether DynaSteel had appeared in this matter for Rule 55(b) purposes. Given that DynaSteel did raise the appearance issue before the trial court pursuant to its motion to set aside, it was necessary for the trial court to find that DynaSteel did not make an appearance before determining that DynaSteel was not entitled to have Aztec's default judgment set aside. With respect to issues of fact where the trial judge made no specific findings, but where a determination of such issue was arguably necessary to the ultimate resolution of the case, we are required by our prior decisions, and by sound institutional considerations to proceed on the assumption that the trial judge resolved all such fact issues in favor of the appellee. EmpireGas, Inc. of Kosciusko v. Bain and Fair Propane Gas Systems, 599 So.2d 971, 976 (1992); Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985); and Dungan v. Dick Moore, 463 So.2d 1094, 1100 (1985).
This court operates, then, under the assumption that the trial court found that DynaSteel had not appeared by manifesting a clear intent to defend in the action brought against it by Aztec. Encompassed in that assumption is the further assumption that disputed issues of fact as to what was said, by whom, and when, were resolved in favor of appellee. We review these presumed findings under the clearly erroneous standard by viewing the evidence in the light most favorable to the appellee. See Bryant 473 So.2d at 179; and Dungan 463 So.2d at 1100.
After a thorough review of the record, we can find no clear error. DynaSteel never hired a lawyer to defend it in this action in the Hinds County Circuit Court. In its *982 communications with Aztec, DynaSteel never referred to a lawyer or even the possibility of retaining one. Retention of counsel is not a litmus test for determining whether a party made a Rule 55(b) appearance, but under the circumstances of this case, one reasonable indication that DynaSteel intended to defend itself would have been the retention of counsel and notice thereof. In all settlement offers that Aztec made to DynaSteel, Aztec was unequivocal on the point that if DynaSteel did not accept those offers, Aztec would proceed forthrightly with litigation, including proceedings for default. Counsel for Aztec explicitly told DynaSteel in a May 1989 letter offering settlement that, if DynaSteel did not accept that offer, Aztec would file an answer within the applicable thirty-day period for the action that Aztec had already filed against DynaSteel. In a settlement offer made to DynaSteel in late June of 1989 by an executive officer at Aztec, the officer warned DynaSteel that, if did not respond to that offer by the close of the next business day, Aztec would seek a default judgment against DynaSteel, since DynaSteel's thirty-day period for answering had long passed by this time.
DynaSteel never did anything in response to these directives. It never expressed any acceptance or rejection of any of these settlement offers to Aztec. It never answered Aztec's complaint. It never did anything, at least not until it was faced with the imminent threat of attachment of its property in Tennessee through an action that Aztec had filed in the Chancery Court of Shelby County, Tennessee, to enforce its judgment from the Hinds County, Mississippi, Circuit Court. Then, DynaSteel retained counsel, but this was approximately five months after DynaSteel had been served with process in the Hinds County, Mississippi, Circuit Court action and approximately two months after the action had been resolved through the entry of default judgment.
Finally, when given the opportunity to support its motion to the circuit court to set aside the default judgment, DynaSteel chose not to even present any witnesses or other competent evidence. The burden of showing that it had made an appearance was upon DynaSteel. Surely, in the absence of a stipulation, such a showing must be made in a form other than an affidavit. Harris v. State, 578 So.2d 617, 619 (Miss. 1991). Thus, even if we were without the presumptions accorded the ruling of the trial court, the complete absence of competent proof of any action indicating an intent to defend is sufficient to support the conclusion of the trial court.

IV
We now turn to the attack on the award of punitive damages.
DynaSteel makes two arguments relating to the pleadings in urging that the circuit court erred in entering a default judgment for punitive damages against DynaSteel. DynaSteel's first contention is that the award of punitive damages to Aztec is void, because it violates the Miss. R.Civ.P. Rule 54(c) proscription against extending default judgments to issues not raised by the pleadings. Secondly, DynaSteel claims that there is not a sufficient basis in the pleadings to support the ground upon which punitive damages were awarded.

A. Rule 54

Rule 54(c) of the Mississippi Rules of Civil Procedure specifically provides, "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Miss.R.Civ.P. 54(c). For clarification, the comments to Rule 54 state that "[a] default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded." MRCP 54 comments.
DynaSteel contends on appeal that Circuit Judge Hilburn's award of punitive damages to Aztec violated this rule. More precisely, DynaSteel claims that punitive damages were awarded to Aztec on a ground that was not raised in Aztec's complaint. DynaSteel believes that while Aztec's complaint only alleged "bad faith refusal to pay" as a ground for an award for *983 punitive damages, punitive damages were awarded by the Circuit Judge on a "fraud" rationale. For this reason, DynaSteel believes the judgment regarding punitive damages extended to matters outside the issues raised by Aztec's pleadings and is therefore void.
The record belies DynaSteel's contention, however. In its complaint against DynaSteel, Aztec made the following plea for punitive damages:
Due to [DynaSteel's] obstinate and willful refusal to pay the above referenced amounts which it clearly owes [Aztec], [Aztec] is entitled to ... punitive damages in the amount of $50,000, a justified amount given the gross bad faith refusal to pay on the part of [DynaSteel].
At other points in its complaint preceding its request for punitive damages, Aztec had laid a backdrop that "[DynaSteel] ha[d] wholly failed and ha[d] obstinately, without a reasonably arguable basis in law or fact, refused to pay the amounts due and owing to [Aztec]", despite the fact that "[Aztec] had made frequent demands upon [DynaSteel] for the payment of these accounts, including a written demand dated March 21, 1989 ..." No other pleadings regarding the nature of DynaSteel's conduct are contained in Aztec's Complaint. So clearly, as the appellant DynaSteel contends, the basis upon which Aztec rested its claim for punitive damages against DynaSteel was bad faith refusal to pay.
In the default judgment entered against DynaSteel, the court awarded Aztec $15,000 in punitive damages. The court found upon the record existing at that time that:
Defendant DynaSteel Corporation ha[d] unjustifiably, and without a reasonably arguable basis in law or fact, refused to pay certain sums of money due by it to Plaintiff Aztec Industries, Inc. The Defendant's conduct in this is case is callous and fraught with insult and malice. Defendant's conduct has shown a callous and gross indifference for the rights of the Plaintiff.
The court supported its ultimate findings of callousness, insult, malice and gross indifference with the basic findings that:
Defendant delayed payment almost five months of an amount it knew that it owed Plaintiff. Then, payment by Defendant was only made after attorneys were retained and suit was filed by Plaintiff ... Plaintiff, and its agents and attorneys, [had] made frequent and persistent demands upon Defendant for the amounts due Plaintiff.
This plain language on the face of the judgment seems to indicate clearly that the court based its award of punitive damages on a theory of bad faith refusal to pay.
DynaSteel contends on appeal, though, that despite this language, "[t]he Court instead predicated its award of $15,000 punitive damages on alleged misrepresentations made by representatives of DynaSteel." To substantiate its claim, DynaSteel relies heavily on the following dialogue in the transcript of the default judgment hearing:
BY THE COURT: ... Now the one thing that [Mr. McGee] did talk about was the fact that they've come in and asked them to go immediately in a rush order work situation wherein it looks like they took their system and went in and began doing their work for them with some special effort being made under the representations that they made to them [that DynaSteel was in sound financial condition].
AZTEC'S ATTORNEY: That's exactly right, Judge. And there was reluctance on the part of Aztec to bend over backwards for these people, especially with the rush order where they put other people's business aside to do it. And those misrepresentations were in fact made.
The statements pointed out by DynaSteel are true accounts of the record, but they must be considered in their context to grasp their full meaning. Judge Hilburn's statement above was made directly in response to the following comment by Aztec's counsel:
... Under the bad faith law as it clearly exists in contractual settings this is clearly, I believe under the proof we've shown, a punitive damages situation.
*984 Further, the statement by Judge Hilburn cited by DynaSteel reflects only a portion of the judge's response to Aztec's claim for punitive damages. That quote was immediately preceded by the following statements from the judge:
Well, of course, you've got just a simple debt, with some very frustrating efforts to try to collect it. Even if the defendant at the time the debt was made intended to delay and try to avoid payment on the account, I'm still not sure that gives rise to punitive damages.
The record simply does not provide enough support for DynaSteel to carry its burden on this issue. It may be, as DynaSteel contends, that claims of misrepresentations by DynaSteel representatives played a role in Judge Hilburn's decision to award punitive damages. This by itself does not necessarily implicate a violation of Rule 54(c), however. A determination that such misrepresentations were made would be probative not just towards an ultimate finding of fraudulent conduct by DynaSteel, but also towards an ultimate finding that DynaSteel had acted with bad faith by refusing to pay on a debt that it induced Aztec to allow it to establish and on which it had no arguable reason to deny payment. Further, the text of the default judgment itself does not indicate that the court employed this evidence towards any issue other than that which Aztec raised in its Complaint as the ground upon which it should receive punitive damages  bad faith. Against this backdrop, it can hardly be said that a Rule 54(c) violation has been shown.

B. Sufficiency of the Pleadings

DynaSteel contends secondly that the circuit court's award of punitive damages should be overturned, because there is an insufficient basis in the pleadings for an award of punitive damages on the basis of fraud. DynaSteel is, of course, correct in its contention that the pleadings must lay a basis for any claim upon which relief is subsequently granted. See Nishimatsu Construction Co., Ltd. v. Houston National Bank, 515 F.2d 1200, 1206 (5th Cir.1975) ("there must be a sufficient basis in the pleadings for the judgment entered"). Under Rule 8 of the Mississippi Rules of Civil Procedure, it is only necessary that the pleadings provide sufficient notice to the defendant of the claims and grounds upon which relief which is sought. See Miss.R.Civ.P. 8 ("The purpose of Rule 8 is to give notice, not to state facts and narrow the issues... .") Aztec's complaint does provide notice to DynaSteel that Aztec seeks to recover punitive damages for what it terms DynaSteel's "obstinate and willful refusal to pay." This is a ground upon which punitive damages may legitimately be granted. Of course, DynaSteel contends that Circuit Judge Hilburn awarded punitive damages not on the ground of bad faith refusal to pay as plead, but instead awarded punitive damages based on allegations of fraud. As discussed above, though, there is insufficient basis in the record for DynaSteel to carry its burden on that charge. For that reason, DynaSteel's argument that the pleadings are insufficient to support the relief granted must also fail.

V
Finally, we turn to the issue whether the the damages awarded are excessive in light of the facts established by the evidence adduced at the hearing to assess damages.

A. Punitive Damages

1. Sufficiency of the Evidence
DynaSteel next contends that there was insufficient proof put on by Aztec at the default judgment hearing to support an award of punitive damages. It is a well-settled proposition that, by default, a defendant admits all of the well-pleaded allegations of fact contained in the plaintiff's complaint. E.g., Nishimatsu Construction Co., Ltd. v. Houston National Bank, 515 F.2d 1200, 1206 (1975). Aztec's complaint specifically alleges that DynaSteel "wholly failed and obstinately, without a reasonably arguable basis in law or fact, refused to pay amounts due and owing" Aztec. Further, Aztec made the following plea for damages in its complaint:

*985 Due to [DynaSteel's] obstinate and willful refusal to pay the above referenced amounts which it clearly owes [Aztec], Aztec is entitled to its actual damages, attorneys' fees, and interest (prejudgment and postjudgment), and also punitive damages in the amount of $50,000, a justified amount given the gross bad faith refusal to pay on the part of DynaSteel.
Aztec's complaint clearly alleges bad faith refusal to pay as a ground for an award of punitive damages against DynaSteel. The traditional and often-cited rule in Mississippi is that punitive damages are recoverable in breach of contract cases "where such breach is attended by intentional wrong, insult, abuse, or such gross negligence as amounts to an independent tort." E.g., Fought v. Morris, 543 So.2d 167, 173 (Miss. 1989); Tideway Oil Programs v. Serio, 431 So.2d 454, 465-66 (Miss. 1983); Progressive Casualty Insurance Company v. Keys, 317 So.2d 396, 398 (Miss. 1975). A number of Mississippi cases have held that "bad faith refusal to pay" on a contract constitutes conduct rising to the level of an independent tort and thereby provides a basis for an award of punitive damages. E.g., Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172, 1190 (Miss. 1990); Employers Mutual Casualty Co. v. Tompkins, 490 So.2d 897, 906 (Miss. 1986); Standard Life Insurance Co. of Indiana v. Veal, 354 So.2d 239, 248 (Miss. 1977).
Allegations that are in effect conclusions of law are not considered well-pleaded allegations, however, and a defendant will not be held to have admitted such averments on default. Nishimatsu 515 F.2d at 1206; Weft, Inc. v. G.C. Investment Associates, 630 F. Supp. 1138, 1140 (E.D.N.C. 1986). Aztec alleged in its complaint that DynaSteel obstinately and willfully refused to pay Aztec and that such conduct constituted gross bad faith. Given the legal significance attached to the phrases "obstinate and willful refusal to pay" and "bad faith refusal to pay", inquiries into the truth of assertions are not purely factual but at least mixed questions of law and fact. All we can take as admitted from these blanket assertions is that DynaSteel did not pay Aztec. The issue of whether DynaSteel's failure to pay constituted such bad faith as to rise to the level of an independent tort is not one that can be taken as admitted but instead must be decided by the court. This is especially so in open account cases such as this, whether commercial or consumer, where more often than not the failure to pay has more to do with inability to do so rather than obstinance. We have been unable to find any precedent for an award of punitive damages on an open account case. It would be the rarest of occasions that such an award would be proper. This is not such an occasion. For that reason, Aztec's claim for punitive damages must be denied.

2. Net Worth
DynaSteel also contends that the award of punitive damages entered on default should be overturned on this appeal, because insufficient proof of DynaSteel's net worth was introduced into evidence at the default judgment hearing. Having concluded that the claim for punitive damages fails for lack of proof we need not and do not reach this issue.

B. Attorneys' Fees

DynaSteel makes the following contentions regarding the award of attorneys' fees in this case: 1) There was no appropriate legal basis upon which attorneys' fees could be awarded in this case; and 2) The court abused its discretion regarding the amount of the fees awarded.
With respect to the legality of an award of attorneys' fees in this case, Mississippi's Open Account Statute  Mississippi Code Annotated § 11-53-81, (Supp. 1992)  specifically provides:
When any person fails to pay an open account within thirty (30) days after receipt of written demand therefor correctly setting forth the amount owed and an itemized statement of the account in support thereof, that person shall be liable for reasonable attorney's fees to be set by the judge for the prosecution and *986 collection of such claim when judgment on the claim is rendered in favor of the plaintiff.
Aztec brought this action precisely to collect on DynaSteel's delinquent account. Aztec had made the proper written demand upon DynaSteel, and far more than thirty days had elapsed between the date such demand was made and the date Aztec filed this action.
DynaSteel contends, however, that because it paid the principal amount due to Aztec before the default judgment was entered against DynaSteel, § 11-53-81 does not authorize an award of attorneys' fees in this case. It points to Magnolia Farm Services v. Tunica Oil Co., 438 So.2d 285 (1983), for support. In Magnolia Farm Services, the debtor paid the full amount of both the principal and accrued interest before trial. Magnolia Farm Services at 286. The case proceeded solely on the issue of whether the creditor's attorney was entitled to collect attorney fees from the debtor pursuant to a contingency fee arrangement between the creditor and his attorney, whereby the attorney would receive 25% of the amount of the delinquency as his fee. Id. The Court held that where no judgment was ever entered in the creditor's favor on the once-delinquent account itself, attorney's fees are not recoverable under § 11-53-81. Id. at 288.
In the instant case, DynaSteel did not satisfy its account in full with Aztec before this case was heard on its merits by the trial court. It did not pay Aztec the amount of accrued interest that it owed Aztec, despite notice from Aztec that it had not paid the full amount that it owed Aztec. Moreover, Aztec did receive a judgment against DynaSteel for the amount of its claim against DynaSteel that had yet to be satisfied. For this reason, an award of attorneys' fees was appropriate under § 11-53-81.
DynaSteel next contends that the trial judge erred by not considering evidence on the appropriate amount for an award of attorneys' fees. The amount of DynaSteel's principal indebtedness to Aztec was $12,835.28. At the default judgment hearing in this matter, Aztec prayed for and was awarded $4,280 in attorneys' fees, approximately one-third of the principal indebtedness. No evidence substantiating the reasonableness of this figure was presented into the record. DynaSteel is correct in that, as a general matter, the amount an attorneys' fees award should be supported by credible evidence and should not be plucked out of the air. Carter v. Clegg, 557 So.2d 1187, 1192 (Miss. 1990). This Court has, however, traditionally approved as reasonable awards of attorneys' fees in collection matters in the amount of one-third of the indebtedness. See Shackelford v. Central Bank of Mississippi, 354 So.2d 253 (Miss. 1978); Jack Cole-Dixie Highway Co. v. Red Ball Motor Freight, 254 So.2d 734 (Miss. 1971). A contingent fee in that amount is fairly standard in collection practice to the extent that we can say that it is presumptively reasonable where the amount involved is small enough so that the fee derived cannot be classified as outrageous. We recognize that in collection practice, obtaining a judgment is often the beginning rather than the end of the process. This is especially so where the judgment is obtained by way of default. Collecting such judgments often proves problematical. The injured party has little opportunity to increase the award of attorneys' fees where non-contingent fees exceed the amount awarded. In such instances, the injured party is not made whole. In light of these factors, we will presume reasonable an attorneys' fee of one-third of the judgment obtained, where the fee so calculated is not more than $5000.
This presumption is, of course, rebuttable. Under the circumstances of any given case, the judiciousness of adhering to this presumption may be impacted by the common factors for determining the reasonableness of an attorneys' fee award:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular *987 employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
E.g., Kaiser Investments, Inc. v. Davis, 538 So.2d 427, 430 (Miss. 1989); Jack Cole-Dixie Highway Co. v. Red Ball Motor Freight, 254 So.2d 734, 741 (Miss. 1971).
For instance, in Young v. Huron Smith Oil Co., Inc., 564 So.2d 36, 40 (Miss. 1990), this Court decided that, under the circumstances of that case, it should not adhere to the standard one-third presumption. In Young, plaintiff/appellee Huron Smith was granted summary judgment in its action for collection on a delinquent account with an amount due of $434,666.28, plus accrued interest and costs. Young at 38. Huron Smith was also awarded $7,500, far less than one-third, in attorney's fees by the trial court. Id. Evidence reflected that Huron Smith's counsel had spent approximately twenty-nine hours on the matter and that his customary hourly rate for legal services was $100. Id. at 40.
On appeal, this Court acknowledged that it has traditionally allowed attorneys' fees in collection suits in the amount of one-third of the indebtedness, but pointed out that the cases which have reached this Court were ones in which a full trial was had. Id. We deemed it appropriate under the circumstances of that case to reduce the award of attorneys' fees from $7,500 to $2,900, the amount clearly established by the evidence. Id. The Court reasoned that where credible evidence showed that plaintiff's counsel had expended only a relatively small amount of time on a matter that was decided without having to be fully tried before a jury, plaintiff's counsel should have been compensated for the actual labor that he expended on the project  his actual hours worked (29) times his normal billing rate ($100/hour). Id.
We have no such evidence here. While it is fairly observable that counsel in all probability had not spent sufficient hours in pursuit of the judgment to justify the award granted when calculated using a reasonable rate, the effort in collecting on the judgment could not readily be measured. It could have been inferred that those efforts would include the litigation in another state which ultimately ensued. Under the facts of the instant case, we have no reason to believe that the established factors for judging the appropriateness of an attorneys' fee award militate against adhering to the presumption we here establish that an award of one-third the amount of the indebtedness in collection matters is reasonable. For that reason, we do not find that the circuit court judge's award of attorneys' fees was excessive.

C. Prejudgment Interest

DynaSteel also contends that there was no basis for an award of prejudgment interest in this case. Mississippi Code Annotated, Section 75-17-7, (Supp. 1992), now provides that:
All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.
This statute would clearly provide for an award of prejudgment interest in a case such as the one sub judice. The provisions of this act, however, apply only to causes of action accruing on or after July 1, 1989. Miss. Code Ann. § 75-17-7, Editor's note, (1972). Aztec filed its complaint in this matter on May 4, 1989. So, § 75-17-7 is not applicable.
*988 Nevertheless, our case law dictates the result. This Court has held on several occasions that prejudgment interest is awardable in actions on an open account. E.g., Stanton & Associates v. Bryant Construction Co. R., 464 So.2d 499, 502 (Miss. 1985); J.R. Watkins Co. v. A.D. Runnels, 252 Miss. 87, 93, 172 So.2d 567, 571 (1965). For a claim to qualify as an open account, it must be liquidated. Stanton & Associates 464 So.2d at 503. There has never been any dispute between the parties in this action as to the principal amount of the debt. That amount was clearly fixed at $12,835. Therefore, pursuant to Mississippi law, this was a case in which the trial judge had the discretion to award prejudgment interest.

CONCLUSION
For the foregoing reasons the judgment of the circuit court is affirmed in all respects except the award of punitive damages. The award of punitive damages is reversed and rendered.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, PITTMAN, McRAE and ROBERTS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.