# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00611-COA

**WARNOCK & ASSOCIATES, LLC**                                    APPELLANT

**v.**

**CITY OF CANTON, MISSISSIPPI**                                    APPELLEE

DATE OF JUDGMENT:              06/02/2020
TRIAL JUDGE:                   HON. JOHN H. EMFINGER
COURT FROM WHICH APPEALED:     MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        W. THOMAS McCRANEY III
ATTORNEYS FOR APPELLEE:        KIMBERLY CELESTE BANKS
                               PIETER JOHN TEEUWISSEN
NATURE OF THE CASE:            CIVIL - CONTRACT
DISPOSITION:                   AFFIRMED - 09/28/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., GREENLEE AND WESTBROOKS, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     In 2017, the City of Canton removed Warnock & Associates LLC as the city engineer and subsequently refused to pay certain invoices Warnock submitted for services allegedly rendered prior to its removal. Warnock sued the City in circuit court for breach of contract. The circuit court subsequently granted summary judgment in favor of the City on the ground that Warnock's contract was not enforceable because it was never entered on the official minutes of the City's Board of Aldermen. In addition, the circuit court later denied Warnock's motion to amend its complaint to assert a claim for quantum meruit. We find no error and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2. In 2013, Warnock was appointed as the city engineer, and Warnock and the City entered into a professional services agreement. However, their agreement was never entered on the minutes of the City's Board of Aldermen.

¶3. On May 4, 2017, the Board of Aldermen voted to remove Warnock as the city engineer. Warnock claims that at that time, the City owed him $109,145.70 under their agreement for services rendered. On or about May 31, 2017, Warnock sent the City thirteen invoices totaling $109,145.70. All of the invoices were dated May 31, 2017, and none of them provided any detail regarding the dates on which the work was performed. Warnock's invoices were placed on the claims docket for the City's Board of Aldermen meeting on August 1, 2017. The Board approved the entire claims docket by a majority vote. On August 2, the Mayor attempted to veto the Board's vote to pay Warnock's claim while accepting the Board's vote to pay the other claims. Warnock refers to the Mayor's action as "an illegal line-item veto." On August 7, the Mayor rescinded his August 2 veto and instead vetoed the entire claims docket because he did "not believe the City . . . ha[d] the legal authority to pay [Warnock's] invoice[s]" and did "not feel that it [was] in the best interests of the City" to pay the invoices. On August 21, the Board approved an amended claims docket that did not include Warnock's claims.

¶4. On August 16, 2017, Warnock attempted to challenge the Mayor's veto by filing a notice of appeal in the circuit court pursuant to Mississippi Code Annotated section 11-51-75 (Rev. 2019). In December 2017, the circuit court dismissed Warnock's appeal as untimely. The court held that the Mayor's August 7 veto was an appealable decision but that it did not

2

become final and appealable until the Board of Aldermen had an opportunity to accept or override the veto. *See City of Madison v. Shanks*, 793 So. 2d 576, 582 (¶24) (Miss. 2000). That occurred at the Board's next regularly scheduled meeting, which was held on August 21. The circuit court reasoned that Warnock's notice of appeal was "premature" because it was filed before the Mayor's veto became final. The court further held that Warnock's appeal had to be dismissed because Warnock failed to file a timely notice of appeal after the veto became final. Warnock did not appeal the decision of the circuit court.

¶5. On September 29, 2017—while its appeal of the Mayor's veto was pending in the circuit court—Warnock commenced a new action by filing a single-count complaint against the City in the circuit court. Warnock asserted a claim for breach of contract based on the City's failure to pay Warnock's invoices. Warnock alleged that its agreement with the City was "a valid and binding contract under Mississippi law and was duly approved by the governing authority of Canton and appropriately incorporated in the minutes thereof in accordance with Mississippi law."

¶6. The City filed a motion to dismiss the complaint, arguing that Warnock's appeal of the Mayor's veto pursuant to section 11-51-75 was its "exclusive remedy." In November 2018, the circuit court denied the City's motion to dismiss. The City then filed an answer to Warnock's complaint. In its answer, the City denied Warnock's allegation that its agreement with the City was valid, binding, and duly entered on the minutes.

¶7. In February 2019, Warnock filed a motion for summary judgment. In response, the City argued, inter alia, that Warnock's motion should be denied because Warnock's

3

agreement was never entered and recorded on the official minutes of the Board of Aldermen and, therefore, Warnock had no enforceable contract with the City. In May 2019, the circuit court held a hearing on the motion. The court denied Warnock's motion on the ground that there were genuine issues of material fact regarding whether the City had requested and approved the services for which it was billed. The court also noted that Warnock had made "no claim for quantum meruit in the complaint." The court stated that it was unnecessary to make any ruling "relative to the minute[s] rule" because it was denying Warnock's motion on other grounds.

¶8. In August 2019, the City filed a motion for summary judgment. The City again argued that Warnock had no enforceable contract with the City because its agreement was never entered and recorded on the official minutes of the Board of Aldermen. The City also argued that Warnock failed to show that any of the invoices it submitted were for services rendered prior to its removal as city engineer. The City noted that all of the disputed invoices were dated May 31, 2017, and that neither the invoices nor any other evidence showed that the work was performed prior to Warnock's removal on May 4, 2017. In response, Warnock argued the City waived the minutes requirement by failing to plead it as an affirmative defense, that the City had "ratified" its obligation to pay the disputed invoices when the Board voted to pay them, and that "genuine issues of material fact exist regarding whether Warnock is entitled to quantum meruit recovery."

¶9. In November 2019, the circuit court held a hearing on the City's motion. The court stated that the City was entitled to summary judgment because "[t]he only claim in

4

[Warnock's] complaint was [for] breach of contract" and Warnock had failed to show that it had any "legally enforceable" contract with the City. The court stated that there had been "some mention of a claim of quantum meruit" but that it was "not passing on . . . that claim" because no such claim was "contained within [Warnock's] complaint." In response, Warnock's counsel argued that the complaint raised the issue because it alleged that Warnock had performed services for which it had not been paid. The court "disagree[d]," stating that while "it [might] be possible for [Warnock] to amend" its complaint, Warnock had never actually filed a motion for leave to amend. The court explained that it was granting the City's motion for summary judgment because the only claim in Warnock's complaint failed as a matter of law.

¶10. The next day, Warnock filed a motion for leave to file an amended complaint to assert a claim for quantum meruit. Following a hearing, the court denied Warnock's motion to amend. The court found that Warnock's motion was untimely because it was not filed until after the court had already granted summary judgment on the sole claim in Warnock's complaint. Therefore, the court entered a final judgment in favor of the City.

¶11. On appeal, Warnock argues the circuit court erred by denying Warnock's motion for summary judgment and then granting the City's motion for summary judgment. Warnock argues that the City waived the minutes rule by failing to plead it as an affirmative defense and that the Board of Aldermen's approval of Warnock's invoices effectively "ratified" Warnock's contract. Warnock also argues that its complaint sufficiently pled a claim for quantum meruit and, in the alternative, that the circuit court abused its discretion by denying

5

Warnock's motion to amend its complaint.

## ANALYSIS

**I.    The circuit court properly denied Warnock's motion for summary judgment and granted the City's motion for summary judgment because Warnock did not have an enforceable contract.**

¶12.    "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the [nonmoving party]." *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (quotation marks omitted). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "[S]ummary judgment is appropriate where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *McGinty v. Grand Casinos of Miss. Inc.-Biloxi*, 245 So. 3d 444, 448 (¶12) (Miss. 2018) (quotation marks omitted). "Importantly, the party opposing summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in [Rule 56 of the Mississippi Rules of Civil Procedure], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.'" *Karpinsky*, 109 So. 3d at 88 (¶10) (quoting M.R.C.P. 56(e)).

¶13.    "A breach-of-contract case has two elements: (1) the existence of a valid and binding

6

contract, and (2) a showing that the defendant has broken, or breached it." *Gulf Coast Hospice LLC v. LHC Group Inc.*, 273 So. 3d 721, 743 (¶77) (Miss. 2019) (quotation marks omitted). For the reasons discussed below, we hold that Warnock's claim fails because it cannot show that it ever had a valid and binding contract with the City. Furthermore, the City did not waive this issue by failing to plead it as an affirmative defense, nor did the City "ratify" the contract after the fact.

> **A. Warnock's agreement was unenforceable because it was never duly entered on the minutes of the Board of Aldermen.**

¶14. The Mississippi Supreme Court "has long held that 'public boards speak only through their minutes and their actions are evidenced solely by entries on the minutes.'" *Hill v. City of Horn Lake*, 160 So. 3d 671, 679 (¶22) (Miss. 2015) (quoting *Thompson v. Jones Cnty. Cmty. Hosp.*, 352 So. 2d 795, 796 (Miss. 1977)). "And where a public board engages in business with another entity, 'no contract can be implied or presumed, it must be stated in express terms and recorded on the official minutes and the action of the board.'" *Wellness Inc. v. Pearl River Cnty. Hosp.*, 178 So. 3d 1287, 1291 (¶9) (Miss. 2015) (brackets omitted) (quoting *Burt v. Calhoun*, 231 So. 2d 496, 499 (Miss. 1970)). Although it is not necessary for the entire contract to be in the minutes, a contract will not be enforced unless "enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence." *Id.* at (¶10) (quoting *Thompson*, 352 So. 2d at 797). In addition, "it is the responsibility of the entity contracting with the Board, not the responsibility of the Board

7

itself, to ensure that 'the contract is legal and properly recorded on the minutes of the board.'" *Id.* (quoting *Thompson*, 352 So. 2d at 797).

¶15.    As the party seeking to enforce the contract, Warnock bears the burden of establishing that the contract was properly recorded on the minutes of the Board of Aldermen. *KPMG LLP v. Singing River Health Sys.*, 283 So. 3d 662, 674 (¶34) (Miss. 2018). Warnock's complaint attached a fifteen-page agreement between Warnock and the City, but Warnock presented no evidence that any part of that agreement was ever entered on the minutes of the Board of Aldermen. Meanwhile, the City submitted the September 3, 2013 minutes of the Board of Aldermen. Those minutes show that Warnock was appointed as the city engineer but make no mention of any contract with Warnock. The circuit court correctly determined that Warnock failed to show that its agreement was ever recorded on the minutes of the Board of Aldermen. Therefore, the contract cannot be enforced against the City, and the circuit court properly granted summary judgment in favor of the city on that ground. *E.g.*, *Id.* at 674-75 (¶35); *Wellness Inc.*, 178 So. 3d at 1292 (¶14); *Dhealthcare Consultants Inc. v. Jefferson Cnty. Hosp.*, 232 So. 3d 192, 194 (¶7) (Miss. Ct. App. 2017), *cert. denied*, 229 So. 3d 714 (Miss. 2017); *Warnock Eng'g LLC v. Canton Mun. Utils.*, No. 3:17CV160-HSO-JCG, 2018 WL 6729991, at *8-9 (S.D. Miss. Dec. 21, 2018), *aff'd*, 832 F. App'x 914 (5th Cir. 2021), *pet. for cert. filed*, No. 20-1526 (U.S. Apr. 28, 2021).

**B.    The City did not waive the minutes requirement.**

¶16.    Warnock argues that the minutes rule is an affirmative defense and that the City

8

waived the issue by failing to plead it in its answer.[1] Rule (8)(c) of the Mississippi Rules of Civil Procedure provides that a party's answer "shall set forth affirmatively" nineteen listed affirmative defenses "and any other matter constituting an avoidance or affirmative defense." "[Our Supreme] Court has interpreted this rule to mean that, generally, if a party fails to raise an affirmative defense in its original answer, the defense will be deemed waived." *Hutzel v. City of Jackson*, 33 So. 3d 1116, 1119 (¶12) (Miss. 2010).

¶17. "The list of affirmative defenses in Rule 8(c) is not intended to be exhaustive." M.R.C.P. 8 Advisory Committee Note. "A matter is an 'avoidance or affirmative defense' only if it assumes the plaintiff proves everything he alleges and asserts, even so, the defendant wins. Conversely, if, in order to succeed in the litigation, the defendant depends upon the plaintiff failing to prove all or part of his claim, the matter is not an avoidance or an affirmative defense." *Hanco Corp. v. Goldman*, 178 So. 3d 709, 713 (¶12) (Miss. 2015) (quoting *Hertz Commercial Leasing Div. v. Morrison*, 567 So. 2d 832, 835 (Miss. 1990)).

---

[1] At the outset, it is not clear that the City *can* waive the minutes requirement. In *KPMG*, *supra*, an accounting firm (KPMG) entered into an agreement to audit the financial statements of Singing River Health System (SRHS), a community hospital owned by Jackson County. *KPMG*, 283 So. 3d at 664 (¶2). SRHS's CFO signed engagement letters with KPMG, and SRHS's board of trustees approved the letters, but none of the letters' terms or conditions were ever recorded in the board's minutes. *Id.* at 665-67 (¶¶4-11). In subsequent litigation, KPMG argued that the minutes rule did not bar enforcement of the engagement letters because SRHS had stipulated that the parties had entered into an agreement for auditing services. *Id.* at 673 (¶32). However, the Supreme Court held that SRHS could not "stipulate that which is prohibited by law." *Id.* The Court reasoned that the minutes rule serves important public policies and that SRHS's alleged "stipulation" to the existence of a contract could "not eradicate the legal requirement" imposed by the minutes rule. *Id.* Arguably, the same could be said of Warnock's waiver argument in this case. However, because we conclude that the City did not waive the minutes requirement, it is unnecessary to address the question whether a public entity *can* waive the requirement.

In addition, "[t]he burden of proving an affirmative defense lies upon the party who relies upon that defense." *Natchez Elec. & Supply Co. v. Johnson*, 968 So. 2d 358, 361 (¶11) (Miss. 2007).

¶18.    Warnock argues that "the minutes requirement falls under the defense of illegality and constitutes a matter of avoidance which must be specifically pled." In describing the affirmative defense of illegality, our Supreme Court has stated that "[o]ur positive law declares some subjects off limits to parties who would contract." *Hertz*, 567 So. 2d at 834. As examples of illegal contracts, the Court listed "contracts contrary to public policy," "contract[s] to surrender custody of child[ren]," and "[g]ambling contracts." *Id.* at 834-35.[2] In an earlier case, the Supreme Court affirmed its "duty and the power to declare void and unenforceable contracts made in violation of law or in contravention of the public policy of the state." *Smith v. Simon*, 224 So. 2d 565, 566 (Miss. 1969). The Court stated that it had

> exercised this power in several classes of illegal contracts, including the following: (1) when the principal purpose of the contract directly furnishes aid and protection to an illegal enterprise, *Smith v. Maryland Casualty Co.*, 252 Miss. 81, 172 So.2d 574 (1965), involving fidelity bond covering employees who misappropriated illegal liquor; (2) when in order to enforce the contract a party must base his cause of action on his own illegal act, *Capps v. Postal Telegraph-Cable Co.*, 197 Miss. 118, 19 So. 2d 491 (1944), involving failure to deliver a telegram concerning a gambling contract; (3) where the contract itself is unlawful, *Powelson v. National Airlines*, 220 Miss. 595, 71 So. 2d 467 (1954), involving a contract to purchase stock in violation of a federal statute, and *Morrissey v. Bologna*, 240 Miss. 284, 123 So. 2d 537 (1960), involving an indebtedness for illegal liquor.

*Smith*, 224 So. 2d at 566.

---

[2] Of course, some "gambling contracts" are legal under current law. *See Frank v. Dore*, 635 So. 2d 1369, 1374 (Miss. 1994).

10

¶19.    This defense of illegality bears little similarity to the requirement that a contract with a public board must be recorded in the board's minutes.  In this case, the contract at issue is for engineering services, which unquestionably is a permissible subject of a contract.  The problem is not that the contract is "illegal."  Rather, the problem is that no valid and binding contract was formed because Warnock failed "to ensure that 'the contract [was] legal and properly recorded on the minutes of the [B]oard [of Aldermen].'"[3]  As our Supreme Court has explained, the minutes requirement "goes to the issue of whether a contract . . . *was ever formed in the first place*." *Jackson County v. KPMG LLP*, 278 So. 3d 1124, 1127 (¶10) (Miss. 2019) (emphasis added).  Moreover, it is not *the City's* burden to prove that the contract was not recorded on the minutes.  It was Warnock's burden—as part of its affirmative case—to show that the contract was duly recorded.  *KPMG*, 283 So. 3d at 674 (¶34).  As stated above, "the existence of a valid and binding contract" is one of the basic elements of a claim for breach of contract, which the plaintiff must affirmatively plead and prove as part of its case.  *Gulf Coast Hospice LLC*, 273 So. 3d at 743 (¶77).  Conversely, the absence of a valid contract is not an affirmative defense that the defendant must plead affirmatively.  *See Balder v. Lavin*, No. 2:16-CV-130-KS-MTP, 2018 WL 2976105, at *3 (S.D. Miss. June 13, 2018) ("[T]he existence of a contract is a necessary element of [a plaintiff's] breach of contract claim under Mississippi law. . . . [T]he defense that no . . . contract exists is not an affirmative defense.").

---

[3] *Wellness Inc.*, 178 So. 3d at 1291 (¶10) ("[I]t is the responsibility of the entity contracting with the Board, not the responsibility of the Board itself, to ensure that 'the contract is legal and properly recorded on the minutes of the board.'" (quoting *Thompson*, 352 So. 2d at 797)).

¶20. Although not controlling, it is also worth noting that Warnock seemed to recognize at the outset of this lawsuit that it was part of its affirmative case to show that the minutes requirement had been met. In its complaint, Warnock specifically alleged that its agreement "constitutes a valid and binding contract under Mississippi law and was duly approved by the governing authorities of Canton *and appropriately incorporated in the minutes thereof in accordance with Mississippi law*." (Emphasis added). In its answer, the City denied this allegation. Because the minutes requirement is not an affirmative defense, that was all the City needed to do in its answer.[4]

¶21. Finally, Warnock argues that the City waived the minutes requirement under the Supreme Court's decision in *MS Credit Center Inc. v. Horton*, 926 So. 2d 167, 180 (Miss. 2006), which held that "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *Id.* at 180 (¶44) (footnote omitted). We disagree. Warnock's waiver argument is "misplaced" because the minutes requirement is simply a "substantive rule[] of law—not [an] affirmative defense[]." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1161 (¶24) (Miss. 2010) (holding that a motion for summary judgment based on the

---

[4] Warnock cites *Burt v. Calhoun*, 231 So. 2d 496 (Miss. 1970), where in reciting the facts of the case, the Supreme Court arguably referred to the minutes requirement as an "affirmative defense." *Id.* at 497. *Burt* was decided prior to the adoption of the Rules of Civil Procedure, nothing in the case turned on whether the minutes requirement was an "affirmative defense," and the opinion did not address that issue. Accordingly, the opinion's single possible reference to the minutes requirement as an "affirmative defense" has no precedential or persuasive value.

"'duty-to-read' and 'imputed-knowledge' doctrines" was timely filed under *Horton*). Therefore, the City properly raised this issue by filing a motion for summary judgment within the time frame established by the parties' agreed scheduling order, *id.*, and the circuit court did not abuse its discretion by rejecting Warnock's waiver argument.[5]

### C. The City did not ratify Warnock's agreement.

¶22. Warnock next argues that the City "ratified" its contract when—after Warnock had been removed as the city engineer—the Board of Aldermen voted to approve a claims docket that included Warnock's disputed invoices. In support of this argument, Warnock cites *Town of Magee v. Mallett*, 178 Miss. 629, 174 So. 246 (1937), which also involved a contract with a municipality that was not entered on the minutes of the board of aldermen. *Id.* at 634, 174 So. at 246-47. In that case, the Supreme Court stated, "It seems to be the settled law . . . that a municipality, in the absence of express statute to the contrary, may subsequently ratify a previously unenforceable contract, which it had the power to make, when the work has been done and the benefits thereof received." *Id.*, 174 So. at 247. In response, the City argues, among other things, that the Board's vote could not ratify Warnock's contract because "there is no estoppel against a public body unless a valid contract is duly entered upon the minutes, which binds that public body." *Dhealthcare Consultants Inc.*, 232 So. 3d at 195 (¶13); *accord Butler v. Bd. of Supervisors for Hinds Cnty.*, 659 So. 2d 578, 582 (Miss. 1995); *Colle Towing Co. v. Harrison County*, 213 Miss. 442, 448, 57 So. 2d 171, 172-73 (1952).

---

[5] *See Hinton v. Sportsman's Guide Inc.*, 285 So. 3d 142, 150 (¶18) (Miss. 2019) (holding that a trial court's application of the *Horton* waiver rule is reviewed "for abuse of discretion" and that "[t]his discretionary decision is entitled to deference").

¶23. In the present case, it is unnecessary for us to decide whether a municipality could ratify an unenforceable contract by approving invoices after the fact. Rather, we conclude that the Board's vote to approve the claims docket has no legal significance because, as discussed above, the Mayor vetoed the Board's action, and the Board accepted the veto. A "mayor's veto . . . is undeniably a part of the legislative process." *Shanks*, 793 So. 2d at 579 (¶12) (quoting *Bryant v. Nichols*, 712 F. Supp. 887, 891 (M.D. Ala. 1989)). A mayor's veto is also an action that may be appealed under Mississippi Code Annotated section 11-51-75. *Shanks*, 793 So. 2d at 580 (¶15). The mayor's veto becomes "final"—and the legislative process finally concludes—only when the municipal legislative body has had an opportunity to either accept or override the veto. *Id.* at 580-82 (¶¶17-24). Therefore, in this case, the initial vote of the Board of Aldermen to approve the claims docket was nothing more than an interlocutory step in the legislative process. Once the Mayor vetoed the Board's action, the Board's vote was legally ineffective and had no further legal significance. Certainly, then, it could not operate as a "ratification" of Warnock's unenforceable contract.

¶24. We recognize that Warnock argues that the Mayor's veto was irregular and unlawful. Warnock argues that the Mayor effectively issued a line-item veto of one group of invoices on a claims docket, and Warnock contends that the Mayor lacks authority to take such action. However, Warnock advances these arguments in the wrong proceeding.

¶25. Warnock had an opportunity to make these arguments by challenging the Mayor's veto via an appeal under section 11-51-75. *Shanks*, 793 So. 2d at 580 (¶15). Warnock attempted to do so in the first action it filed in the circuit court (Civ. Action No. 2017-0174),

14

but the circuit court held that Warnock's appeal was premature because it was filed before the Board of Aldermen had an opportunity to accept or override the veto. *See id.* at 582 (¶24) (holding that a mayoral veto becomes "final for purposes of perfecting an appeal under [section] 11-51-75 . . . when it [is] accepted by the [b]oard"). The circuit court further held that Warnock's appeal had to be dismissed because Warnock failed to file a timely notice of appeal after the Mayor's veto became final. The circuit court's order of dismissal was a final judgment in that action, which Warnock chose not to appeal.

¶26.    Having failed in its attempt to challenge the Mayor's veto in an appeal under section 11-51-75, Warnock cannot now collaterally attack the veto in this breach-of-contract action. *A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 569-70 (¶23) (Miss. 2010) ("Proceeding in opposition to a lawful decision of the Board outside of the exclusive remedies available [under section 11-51-75] constitutes a collateral attack that will not be maintained." (quoting *Hood v. Perry County*, 821 So. 2d 900, 902 (¶6) (Miss. Ct. App. 2002)); *accord Biloxi-Pascagoula Real Estate Bd. v. Miss. Reg'l Hous. Auth. No. VIII*, 231 Miss. 89, 98-99, 94 So. 2d 793, 796-97 (1957). To be clear, Warnock had a right to both challenge the Mayor's veto in an appeal under section 11-51-75 and also file a separate claim for breach of contract and damages. *See Falco Lime Inc. v. Mayor and Aldermen of City of Vicksburg*, 836 So. 2d 711, 720 (¶¶36-39) (Miss. 2002). What Warnock cannot do is attempt to collaterally attack the legality of the Mayor's veto outside of a timely appeal under section 11-51-75.

¶27.    Accordingly, for all the foregoing reasons, the Board of Aldermen's vote to approve a claims docket that included Warnock's disputed invoices did not operate as a retroactive

15

ratification of Warnock's contract.

> **II.    Warnock did not assert a claim for quantum meruit in its original complaint, and the circuit court did not abuse its discretion by denying Warnock's motion for leave to amend its complaint.**

¶28.    Warnock argues that even if its breach of contract claim fails, it can recover under a theory of quantum meruit. Warnock first argues that its original complaint stated a claim for quantum meruit under Mississippi Code Annotated section 31-7-57(2) (Rev. 2014).[6] In the alternative, Warnock also argues that the circuit court abused its discretion by denying Warnock's motion for leave to amend its complaint to assert such a claim.

---

[6] Section 31-7-57(2) begins by prohibiting public agencies and governing authorities from entering into, ratifying, or making any payment under any contract unless the contract was made "in the manner provided by law." *Id.* The statute then states,

> provided, however, that any vendor who, in good faith, . . . performs any services under a contract to or for [an] agency or governing authority, shall be entitled to recover the fair market value of such . . . services, notwithstanding some error or failure by the agency or governing authority to follow the law, if the contract was for an object authorized by law and the vendor had no control of, participation in, or actual knowledge of the error or failure by the agency or governing authority.

*Id.* As explained below, we do not reach the merits of Warnock's claim under the statute because we conclude (1) that Warnock failed to plead such a claim in its original complaint and (2) that the circuit court did not abuse its discretion by denying Warnock's motion for leave to amend its complaint to assert such a claim. That said, it is not clear that this statute applies to contracts that are unenforceable due to a failure to comply with the minutes rule. The statute protects vendors who provide services in good faith and who "had no control of, participation in, or actual knowledge of the error or failure *by the agency or governing authority*." *Id.* (emphasis added). As discussed above, the Supreme Court has long held that "it is the responsibility of the entity contracting with the Board, *not the responsibility of the Board itself*, to ensure that the contract is legal and properly recorded on the minutes of the board." *KPMG*, 283 So. 3d at 670 (¶20) (emphasis added) (quoting *Wellness Inc.*, 178 So. 3d at 1291 (¶10)). Thus, Warnock's contract is unenforceable due to *Warnock's* failure to ensure that the contract was legally and properly recorded on the Board's minutes, *id.*, not because of any "error or failure by the [Board]." Miss. Code Ann. § 31-7-57(2).

16

¶29. Warnock argues that "[a] remedy by statute will not fail if the pleading states sufficient allegations which notify the court and the opposing party that the allegations fall within the statute, even though the statute is not named in the pleadings." *Southland Enters. Inc. v. Newton County*, 940 So. 2d 937, 944 (¶27) (Miss. Ct. App. 2006). In *Southland*, the defendant argued that the plaintiff waived its right to prejudgment interest because it "did not plead for relief under [the] particular statute" that granted it a right to such interest. *Id.* We rejected the defendant's argument because the plaintiff's complaint expressly requested prejudgment interest and pled facts justifying an award of prejudgment interest. *Id.*

¶30. The issue in the present case is readily distinguishable from the one addressed in *Southland*. The problem here is not simply that Warnock did not cite a "particular statute." Rather, the problem is that Warnock's complaint failed to give any indication or notice that it was pursuing a quantum meruit claim under *any* statute or other legal theory. Rather, Warnock's complaint very clearly asserted only *one* cause of action: "COUNT I: BREACH OF CONTRACT." Although Rule 8 of the Rules of Civil Procedure "has eliminated the technical forms of pleadings required in years past, notice pleadings are still required to place the opposing party on notice of the claim being asserted." *Estate of Stevens v. Wetzel*, 762 So. 2d 293, 295 (¶11) (Miss. 2000). The complaint must "provide sufficient notice to the defendant of the claims and grounds upon which relief which is sought." *Id.* (emphasis omitted) (quoting *Dynasteel Corp. v. Aztec Indus. Inc.*, 611 So. 2d 977, 984 (Miss. 1992)). Warnock's complaint made no mention of a quantum meruit claim under any legal theory, and we agree with the circuit court that the complaint failed to provide the City with notice

17

that Warnock was asserting such a claim.[7]

¶31.    We now turn to Warnock's alternative argument that it should have been given leave to amend its complaint to assert a quantum meruit claim. "Motions for leave to amend are left to the sound discretion of the trial court. This Court reviews such determinations under an abuse of discretion standard and unless convinced that the trial judge abused his discretion, we are without authority to reverse." *Wangler v. Wangler*, 294 So. 3d 1138, 1140 (¶6) (Miss. 2020) (brackets omitted) (quoting *Church v. Massey*, 697 So. 2d 407, 413 (Miss. 1997)). Leave to amend a complaint "shall be freely given when justice so requires." M.R.C.P. 15(a). However, there are good and valid reasons for denying a motion for leave to amend, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Webb v. Braswell*, 930 So. 2d 387, 393 (¶9) (Miss. 2006) (quoting *Moeller v. Am. Guar. & Liab. Ins. Co.*, 812 So. 2d 953, 962 (¶28) (Miss. 2002)).

¶32.    The circuit court found that Warnock's motion should be denied because of undue delay, and we cannot say that the circuit court's ruling was an abuse of discretion. Given that Warnock was suing a municipality for breach of contract, Warnock should have determined prior to filing suit or early on in the case whether its contract was properly recorded in the

---

[7] We note that our holding is consistent with the decision of a federal district court in a lawsuit that Warnock filed against Canton Municipal Utilities (CMU). *Warnock Eng'g LLC*, 2018 WL 6729991, at *9 (holding that Warnock's breach-of-contract claims against CMU failed because the contracts were not recorded in the minutes of CMU's board and that Warnock's complaint failed to plead a claim for recovery in quantum meruit).

18

Board's minutes and whether any alternative claims should be asserted. Moreover, when the circuit court denied Warnock's motion for summary judgment, the court specifically noted that there was "no claim for quantum meruit in the complaint." Nonetheless, Warnock did not file a motion for leave to amend the complaint. The City then filed its own motion for summary judgment, and while Warnock raised the issue of quantum meruit in its response, Warnock still did not seek leave to file an amended complaint. Rather, Warnock waited until after the circuit court had granted the City's motion for summary judgment before finally seeking leave to amend.[8] Under these circumstances, we cannot say that the circuit court abused its discretion by denying Warnock's belated motion to amend its complaint. *See id.* at 394 (¶11) (holding that the trial judge "clearly did not abuse his discretion by denying" a motion to amend because the amendment "was easily possible at a much earlier stage in the litigation, and the [plaintiffs gave] no good reason why this was not done").

## CONCLUSION

¶33. The circuit court properly denied Warnock's motion for summary judgment and granted the City's motion for summary judgment because the undisputed facts show that Warnock never had an enforceable contract with the City. In addition, the circuit court did not abuse its discretion by denying Warnock's motion for leave to amend its complaint to

---

[8] We also note that in Warnock's lawsuit against CMU, the federal district court pointed out in December 2018 that Warnock had failed to plead a claim for quantum meruit in its complaint against CMU. *Warnock Eng'g LLC*, 2018 WL 6729991, at \*9 (holding that Warnock's breach-of-contract claims against CMU failed because the contracts were not recorded in the minutes of CMU's board and that Warnock's complaint failed to plead a claim for recovery in quantum meruit). This was before either party had filed a motion for summary judgment in the instant case.

19

assert a new quantum meruit claim.

¶34.  **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR.  McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**